REVISED AUGUST 22, 2002

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-60651**

_____

**INVESTMENT PARTNERS, L.P.,**

**Plaintiff-Appellant,**

**v.**

**GLAMOUR SHOTS LICENSING, INC., and**
**CANDID COLOR SYSTEMS, INC.,**

**Defendants-Appellees.**

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**Southern Division**

July 15, 2002

Before JOLLY, JONES and BARKSDALE, Circuit Judges.

Edith H. Jones, Circuit Judge:

The questions presented in this appeal are whether an arbitration clause that prevents the award of "punitive damages" proscribes antitrust treble damages and whether, if so, the arbitration clause is void as against public policy. We affirm the district court's decision that statutory treble damages are not equivalent to "punitive damages," the clause is enforceable, and the parties must arbitrate.

In 1992, Investment Partners entered into a franchise and licensing agreement with Glamour Shots Licensing, Inc. ("GSL"). The licensing agreement permitted Investment Partners to open and operate a "Glamour Shots" store in Biloxi, Mississippi. The licensing agreement required Investment Partners to use the services of Candid Color Systems, Inc. ("CCS"), a wholly owned subsidiary of GSL, for all photo processing needs related to the operation of the "Glamour Shots" franchise.

In October 2000, Investment Partners filed suit against GSL and CCS in federal district court alleging violations of federal antitrust laws. According to Investment Partners, CCS charged exorbitant prices for photo processing pursuant to an illegal tying agreement with GSL. Investment Partners sought compensatory and statutory treble damages for alleged violations of the Clayton Act, 15 U.S.C. § 15.

Appellees moved to compel arbitration, pursuant to 9 U.S.C. § 4, and a provision of the licensing agreement that provides:

> 29. Arbitration: Any claim, controversy or dispute arising out of or relating to this Agreement or out of [Investment Partners'] operation of the Business shall, except as set forth herein, be settled by arbitration in Oklahoma City, Oklahoma, in accordance with the rules of the American Arbitration Association. This agreement to Arbitrate shall survive the termination of this Agreement. Any arbitration shall be undertaken pursuant to the Federal Arbitration Act . . . The arbitrators shall not award punitive damages. . . .

2

Appellees argued that this provision required arbitration because Investment Partners' antitrust claims arose out of the licensing agreement. That the clause covers the parties' dispute is uncontested.

Investment Partners responded, however, that the clause is void because, in prohibiting the award of punitive damages, it prevents the arbitrator from awarding treble damages as required by federal antitrust laws. The district court rejected Investment Partner's argument, granted the motion to compel arbitration, and dismissed Investment Partners' suit without prejudice. Investment Partners now appeals.

**DISCUSSION**

This court reviews an order compelling arbitration *de novo*. OPE Int'l L.P. v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001). All doubts concerning arbitrability are resolved in favor of arbitration. Id. (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983)).

Relying primarily on Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001), Appellees contend that this court's jurisdiction "extends only to determine whether a valid agreement to arbitrate exists, not to determine whether public policy conflicts with the remedies provided in the arbitration clause." Larry's United, 253 F.3d at 1086. The circuit

3

courts are split on whether the enforceability of an arbitration clause should be adjudicated before arbitration when a party contends that public policy prevents the clause's waiver of certain remedies. Compare Larry's United, and Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3rd Cir. 1997) ("availability of punitive damages cannot enter into a decision to compel arbitration."); with Paladino v. Avnet Computer Tech., Inc., 134 F.3d 1054, 1059-60 (11th Cir. 1998) (refusing to compel arbitration and holding that arbitration clause was unenforceable because it "completely proscribes an arbitral award of Title VII damages") and Graham Oil Co. v. Arco Prod. Co., 43 F.3d 1244, 1246-48 (9th Cir. 1995) (holding that arbitration clause which compelled surrender of statutory remedies afforded by the Petroleum Marketing Practices Act was unenforceable because it contravened federal public policy). Although the question is close, we conclude that appellate jurisdiction exists because IP seeks to void the entire arbitration clause on public policy grounds, albeit by means of attacking the remedy provision, and the Supreme Court disposed of a similar argument, without submitting the issue first to the arbitrators, in Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 121 S.Ct. 513 (2000).

Investment Partners asserts that arbitration is not an adequate substitute for a judicial forum in this case because the arbitration clause in the licensing agreement denies a "statutorily

guaranteed right" to treble damages. Because prohibition of punitive damages in the arbitration agreement prevents the arbitrator from awarding statutory treble damages, Investment Partners contends that the arbitration clause is void. This argument is meritless.

In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346 (1985), the Court discussed the role of treble damages in federal antitrust statutes. The Court explained:

> Notwithstanding its important incidental policing function, the treble-damages cause of action conferred on private parties by § 4 of the Clayton Act . . . seeks primarily to enable an injured competitor to gain compensation for that injury. "Section 4 is in essence a remedial provision. . . . Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing . . . It nevertheless is true that the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy."

Id. at 635-36, 105 S.Ct. 3346 (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 485-86, 97 S.Ct. 690 (1977)). Unlike punitive damages, which punish a wrongdoer, treble-damages compensate an injured party. Id. While these statements do not constitute the principal holding in Mitsubishi Motors Corp., they are certainly definitive enough to bind this inferior court. Therefore, the prohibition in the parties' arbitration agreement against awarding "punitive damages" does not extend to statutory treble damages.

5

The Supreme Court has occasionally referred to treble damage remedies or awards as "punitive." See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 785-86 (2000) (holding that treble damages and civil penalty of up to $10,000 per claim authorized by the False Claims Act are "essentially punitive in nature" because "'[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers'" (quoting Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981)); cf. also id. (noting that United States ex rel. Marcus v. Hess, 317 U.S. 537, 550 (1943), "suggest[s] that treble damages, such as those in the antitrust laws, would have been [punitive]"); C.I.R. v. Glenshaw Glass Co., 348 U.S. 426, 474-75, 477 (holding that "money received as exemplary damages for fraud or as the punitive two-thirds portion of a treble-damage antitrust recovery must be reported by a taxpayer as gross income under s 22(a) of the Internal Revenue Code of 1939"). We do not find these references as significant as Mitsubishi Motors Corp. in the present context. First, the task in this case is to construe "punitive" in a private parties' arbitration agreement, which the Supreme Court has clearly said we interpret broadly to permit arbitration as far as possible. Second, it makes sense to draw a distinction, from the standpoint of the parties' expectations when they entered the arbitration

6

agreement, between statutory treble damages and common law punitive damages. That is, punitive damages are awarded under notoriously open-ended legal standards and a broadly defined constitutional limit concerning the amount awarded. Treble damages, however, represent a mere mathematical expansion of the actual damages calculated by the arbitrator. While private parties might well exclude common law punitive damages, with all their uncertainty, from the arbitrator's authority, the riskiness of committing antitrust damages to the arbitrator is much smaller. Thus, antitrust treble damages may indeed be "punitive" simply because they exceed the actual damages that have been inflicted on the victim of violative conduct, but they are not "punitive" for purposes of interpreting the scope of an arbitration clause.

Investment Partners can vindicate its statutory rights in arbitration pursuant to the terms of its agreement. Although the arbitrator cannot award punitive damages,[1] he may award antitrust treble damages, and the arbitral forum is an adequate substitute for the judicial forum in this case. The district court correctly held that Investment Partners' arbitration agreement must be enforced. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647 (1991).

## CONCLUSION

---

[1] Provisions in arbitration agreements that prohibit punitive damages are generally enforceable. See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 56-57, 115 S.Ct. 1212 (1995).

7

For the foregoing reasons, we **AFFIRM** the judgment of the district court.