# EMMETT J. HARTY *v.* CANTOR FITZGERALD AND COMPANY
## (SC 17201)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued January 10—officially released August 16, 2005

*Aaron S. Bayer*, with whom were *Suzanne E. Wachsstock* and, on the brief, *Christian Turner*, for the appellant (defendant).

*Edward V. O'Hanlan*, with whom was *Thomas J. Donlon*, for the appellee (plaintiff).

### Opinion

KATZ, J. The defendant, Cantor Fitzgerald and Company, appeals from the judgment of the trial court denying the defendant's application to vacate in part an arbitration award rendered in favor of the defendant's former employee, the plaintiff, Emmett J. Harty, and granting the plaintiff's application to confirm the award. The trial court concluded that the arbitration panel had not manifestly disregarded the law in awarding to the

plaintiff compensatory damages for the defendant's failure to pay the plaintiff a 1999 annual bonus and, pursuant to the wage collection statute, General Statutes § 31-72,[1] double damages, attorney's fees and costs for the defendant's failure to pay his 1998 and 1999 annual bonuses. With respect to the award under § 31-72, the defendant's principal contention is that the trial court improperly failed to apply de novo review to its claim that the arbitrators had exceeded their authority by awarding double damages, attorney's fees and costs and that, under that standard, the award must be vacated because the submission expressly barred an award of punitive damages, exemplary damages or damages in the nature of punitive or exemplary damages. With respect to the award of compensatory damages for the 1999 bonus, the defendant claims that the trial court improperly determined that the arbitrators had not manifestly disregarded the law in determining that the bonus was a "wage" within the meaning of § 31-72 and that

---

[1] General Statutes § 31-72 provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages, arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

the plaintiff was entitled to the bonus. We conclude that the trial court improperly failed to vacate the award with respect to attorney's fees and costs only. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The defendant is a New York corporation doing business in Connecticut. The parties executed an employment agreement (agreement) under which the plaintiff was to serve as a managing director of one of the defendant's divisions for a term beginning on June 28, 1996, and ending on December 31, 1999. The agreement thereafter automatically would extend for successive one year periods unless either party notified the other of its intention not to renew the agreement within a prescribed time period, at which point the plaintiff would become an employee at will. Under the terms of the agreement, the plaintiff was to receive annual bonuses in addition to a base salary. The agreement also contained an arbitration provision providing in relevant part that, "any disputes, differences or controversies arising under this [a]greement shall be settled and finally determined by arbitration . . . . However, it is understood and agreed that the arbitrators are not authorized or entitled to include as part of any award rendered by them, special, exemplary or punitive damages or amounts in the nature of special, exemplary or punitive damages regardless of the nature or form of the claim or grievance that has been submitted to arbitration . . . ."

During the plaintiff's term of employment, certain disputes arose between the parties. One of these disputes concerned the plaintiff's 1996 and 1997 bonuses. The parties ultimately executed an agreement under which the defendant would pay the plaintiff approximately $150,000 as bonus compensation in exchange

for his release of claims, including any claim under § 31-72, against the defendant arising from the dispute.

As a result of a subsequent dispute, in December, 1998, the parties exchanged letters notifying the other of their intention not to renew the agreement and that, as a result, the agreement would terminate on December 31, 1999. By letter dated December 31, 1998, the defendant ordered the plaintiff to remain on home leave until further notice and not to have any contact with the defendant's employees or clients. One year later, by letter dated December 31, 1999, the defendant notified the plaintiff that it had terminated his employment. The defendant paid the plaintiff his salary during the year he remained on home leave, but did not pay him annual bonuses for 1998 and 1999.

Thereafter, the plaintiff filed a claim for arbitration asserting that the defendant had breached the employment agreement and seeking, inter alia, compensatory damages for his 1998 and 1999 bonuses and, pursuant to § 31-72, additional damages, attorney's fees and costs. After seventeen days of hearings, a panel of three arbitrators rendered an award in favor of the plaintiff of compensatory damages in the amount of $1,157,393.22, plus interest, and pursuant to § 31-72, additional damages in the amount of $1,157,393.22, attorney's fees of $382,556 and costs of $39,107.88. The arbitrators did not issue a memorandum of decision setting forth factual findings and legal conclusions supporting the award.

The plaintiff filed an application in the trial court to confirm the award pursuant to General Statutes § 52-417. The defendant filed an application to vacate the award in part pursuant to General Statutes § 52-418 (a) (4),[2] claiming that the arbitrators had manifestly

---

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it

disregarded the law and evidence by awarding to the plaintiff: (1) compensatory damages for the 1999 bonus; and (2) double damages, attorney's fees and costs pursuant to § 31-72 for both the 1998 and 1999 bonuses.[3] At a hearing on the application to vacate, the defendant also argued that the submission was restricted because, under the terms of the employment agreement, the arbitrators could not award punitive, exemplary or special damages. Accordingly, the defendant contended that the arbitrators had exceeded their authority by awarding such damages.

The trial court first determined that, in the absence of clear authority to the contrary, the arbitrators properly had determined that the submission was unrestricted, despite its prohibition on an award of punitive damages, because the parties had agreed to submit to arbitration "any disputes" arising under their agreement. The court then concluded that the contested portions of the award must be reviewed under the manifest disregard of the law standard. Turning to the defendant's claim regarding the damages awarded under § 31-72, the trial court determined that neither the plain language of the statute, the statute's legislative history nor our case law supported the defendant's contention that the law was well-defined that double damages, fees and costs under the wage collection statute were punitive and, therefore, barred under the parties'

---

finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] The parties jointly stipulated that $802,638.64 of the award, which included, inter alia, compensatory damages and interest for the 1998 bonus, was unchallenged.

agreement. Turning to the defendant's claim regarding the award of compensatory damages for its failure to pay the plaintiff his 1999 bonus, the court concluded that the arbitrators had not manifestly disregarded the law either as to whether the plaintiff's bonus was a "wage" under the statute or as to whether the plaintiff was entitled to receive the bonus under the terms of the employment agreement. Accordingly, the trial court denied the defendant's application to vacate part of the award and granted the plaintiff's application to confirm the award in its entirety. The defendant then appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant challenges the trial court's conclusion that the defendant failed to meet its burden of proving that the arbitrators exceeded their authority by rendering the award under § 31-72 and the award of compensatory damages for the 1999 bonus. It first claims that the trial court improperly reviewed under the manifest disregard of the law standard, rather than de novo, its claim that the award of double damages, attorney's fees and costs under § 31-72 was outside the scope of the submission. The defendant contends that, under de novo review, the trial court should have determined that the arbitrators exceeded their authority because they were barred under the parties' agreements from awarding such damages. The defendant further contends that, even under the manifest disregard standard, the trial court improperly determined that the arbitrators had not exceeded their authority: (1) in light of the express limitations in the agreement; and (2) because the plaintiff's bonuses are not "wages" within the meaning of § 31-72. Finally, the defendant contends that the trial court improperly denied its application to vacate the award with respect to the compensatory damages for the 1999 bonus because the arbitrators

had manifestly disregarded the law and evidence demonstrating that, under the terms of the agreement, the plaintiff was not entitled to the bonus.

Before addressing these claims, we set forth the well established principles that guide our analysis. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission

tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision. . . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . [Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . We have also recognized, however, that . . . [a]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 92–95, 868 A.2d 47 (2005). With these principles in mind, we turn to the defendant's claims.

I

We first consider the defendant's claims relating to whether the trial court properly concluded that the defendant had failed to meet its burden of proving that the arbitrators exceeded their authority by rendering

an award of damages under § 31-72 because that award exceeded the scope of the submission. The defendant challenges both the standard of review applied and the trial court's ultimate conclusion. We address each of these in turn.

A

The defendant claims that the trial court improperly concluded that, in light of its determination that the submission was unrestricted, the issue of whether the award under § 31-72 conformed to the submission must be reviewed under the manifest disregard of the law standard. Specifically, the defendant claims that, irrespective of whether the submission is unrestricted, that issue must be reviewed de novo, and that, under that standard, the trial court should have determined that the arbitrators exceeded their authority by awarding the double damages, attorney's fees and costs because they were barred under the parties' agreements from awarding punitive or exemplary damages, or damages of such a nature.[4]

In response, the plaintiff contends that: (1) the defendant agreed in the proceedings before the trial court that manifest disregard of the law was the proper standard of review and, therefore, we should not review this claim; and (2) the proper standard of review of an award rendered pursuant to an unrestricted submission is manifest disregard of the law, not the heightened standard sought by the defendant. We conclude that the

---

[4] We note that, in its briefs to this court, the defendant twice summarily has asserted that the award under § 31-72 constitutes "special" damages—once in its original brief and once in its reply brief—but has offered no argument or case law in support of that position, and the trial court never addressed this question, possibly due to the fact that the defendant did not assert that argument in its briefs to that court either. Thus, we do not consider whether the award under § 31-72 exceeded the scope of the submission to the extent that the submission prohibits an award of special damages or damages in the nature of special damages.

issue is preserved for review and that the trial court improperly reviewed the issue under the manifest disregard of the law standard.

We agree with the plaintiff that the defendant expressly sought review solely under the manifest disregard of the law standard in each of its submissions to the trial court—its application to vacate the award, its memorandum in support of the application and its supplemental brief. In the defendant's argument to the trial court on its application, however, although not a model of clarity as to this issue, the defendant expressly stated twice that the trial court must review "de novo" the issue of whether the arbitrators had exceeded their authority or jurisdiction by rendering the award pursuant to § 31-72. Moreover, the defendant repeatedly asserted that the submission was restricted, a claim that, if correct, would have entitled the defendant to de novo review. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670 n.1, 791 A.2d 546 (2002). Therefore, we conclude that the defendant adequately preserved its claim that the trial court improperly had failed to apply de novo review.

We turn, therefore, to the issue of whether the proper standard of review for determining whether the arbitrators exceeded their authority in that the award does not conform to the submission is de novo, as contended by the defendant, or manifest disregard of the law, as contended by the plaintiff. We begin by noting that the defendant does not challenge the trial court's conclusion that the submission is unrestricted.[5] In light of that

[5] The defendant does not state anywhere in its briefs to this court that the trial court improperly determined that the submission was unrestricted. To the contrary, its argument is that this determination was immaterial because "the Connecticut Supreme Court has clearly established that the court must review de novo an award that is challenged as exceeding specific remedial limits that the parties have imposed on the arbitrators' authority—even if the agreement is otherwise 'unrestricted.'" In support of that proposition, the defendant cites *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 789–90, 830 A.2d 729 (2003),

posture, as noted previously, "the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001).

Even with an unrestricted submission, however, it is well settled that the award may be reviewed to determine if the arbitrators exceeded their authority, one of the statutory grounds under § 52-418 for vacating an award. *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 94. We have explained that, "[i]n our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." (Internal quotation marks omitted.) Id. The standard for reviewing a claim that the award does not conform to the submission requires what we have termed "in effect, de novo judicial review." *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 789, 830 A.2d 729 (2003). We also have recognized, however, that a claim that the arbitrators have manifestly disregarded the law may be asserted under § 52-418 (a) (4) as well. *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992) ("an

a case in which the parties had stipulated that the submission was unrestricted. We note, however, that the defendant asserts in two footnotes in its reply brief that the parties' agreement "restricted" the arbitrators' remedial authority.

The defendant suggested at oral argument before this court that its claim on appeal to this court that the award was outside the scope of the submission essentially is another way of stating that the submission was restricted. Whatever the merits arguably might be to such a contention generally or under the facts of this case, the defendant did not assert that contention in its brief to this court. We generally do not consider claims raised for the first time at oral argument. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 12–13 n.8, 826 A.2d 1088 (2003).

award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 [a] [4] because the arbitrator has 'exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made' "). Thus, a claim that the arbitrators have "exceeded their powers" may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law. See id., 6–8 (reviewing challenge to award on both grounds under § 52-418 [a] [4]).

Although we have not explained precisely what "in effect, de novo judicial review" entails as applied to a claim that the award does not conform with the submission, that standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission.[6] Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred.[7] With respect to the latter, we have explained

---

[6] This court previously has stated, somewhat contradictorily, that, "[i]n deciding whether the arbitrators have exceeded their powers, this court, as a general rule, examines only the award to determine whether it is in conformity with the submission. *The memorandum of the arbitrator is irrelevant. . . . The memorandum of decision may, however, be examined to determine if an arbitrator has exceeded his or her authority by making an award beyond the scope of the submission.*" (Citation omitted; emphasis added.) *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 271, 487 A.2d 553 (1985). In the present case, the arbitrators did not issue a memorandum of decision.

[7] A treatise on commercial arbitration explains that, in reviewing a challenge that the arbitrators have exceeded their powers in that the award does not conform to the submission, "courts have construed this provision [allowing an arbitrator's decision to be vacated] narrowly . . . holding that it applies only when arbitrators decide issues not presented to them or grant relief not authorized in the arbitration agreement. The parameters of the

that, "as long as the arbitrator's remedies were 'consistent with the agreement' they were within the scope of the submission." *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, supra, 265 Conn. 790; see also *In re Matter of Granite Worsted Mills, Inc.*, 25 N.Y.2d 451, 456, 255 N.E.2d 168, 306 N.Y.S.2d 934 (1969) ("where it is clear from face of award itself . . . that the arbitrator has included an element of damages specifically excluded by the contract pursuant to which he obtained his very authority to act, he exceeds his powers under the contract and the award thus made must be vacated upon proper application"). In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713*, 35 Conn. App. 804, 811, 647 A.2d 755 (1994) (concluding that trial court improperly granted plaintiff's application to vacate arbitration award because, in determining whether award conformed to submission, it provided an independent interpretation of contract and thus engaged in fact-

exceeded powers inquiry are defined by the submission of issues to the arbitrator and the arbitrator's authority as set forth in the arbitration agreement. The arbitrator is empowered to decide all issues of fact and law unless he or she is contractually restricted from doing so in some specific way by the language of the arbitration clause. . . .

"In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error." 1 M. Domke, Commercial Arbitration (3d Ed. 2003) § 39:6, pp. 39-12 through 39-13.

finding beyond scope of trial court's powers of review); *Board of Education* v. *Local 818, Council 4, AFSCME, AFL-CIO*, 5 Conn. App. 636, 640, 502 A.2d 426 (1985) ("[w]here one party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement, the court will compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply that agreement as written"), citing *Hudson Wire Co.* v. *Winsted Brass Workers Union*, 150 Conn. 546, 553, 191 A.2d 557 (1963).

With these principles in mind, we turn to the issue of whether the trial court applied an incorrect standard of review. The trial court began its review of the defendant's claims by stating the general principle that, "[i]f the award conforms to the submission, the arbitrators have not exceeded their powers." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 228, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). It further noted that, to determine whether the award conformed to the submission, it must determine whether the submission was restricted or unrestricted. The trial court then determined that the arbitrators properly had determined that the submission was unrestricted because the agreement required that "all disputes be submitted to arbitration," and "[t]he parties [had] provided no specific authority on whether [the] language proscribing the award of punitive damages by the arbitrators would change this apparent unrestricted submission to a 'restricted' one under Connecticut law." Thus, it concluded that the entire award must be examined under the manifest disregard of the law standard. It proceeded to determine in accordance with that standard that "[t]he defendant has not born[e] its burden of proving [that] the award did not conform to the arbitration agreement."

The foregoing analysis indicates that the trial court failed to engage in the proper review of the issue presented. The trial court essentially collapsed the two grounds for vacating an award under § 52-418 (a) (4) when it subsumed its inquiry of the issue of whether the award conformed to the submission within the issue of whether the arbitrators had manifestly disregarded the law. It is clear under our case law, however, that, when raised, the two issues require independent consideration. See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 95–96; *Garrity* v. *McCaskey*, supra, 223 Conn. 12–13; see also *Board of Education* v. *AFSCME, Local 4, Council 287*, 195 Conn. 266, 273, 487 A.2d 553 (1985) (concluding that arbitration panel exceeded its authority in making award outside scope of submission by considering and basing its award on document that was not part of parties' agreement). Indeed, a claim that the award does not conform to the submission is predicated on the arbitrators' absolute lack of authority to decide an issue or to grant certain relief. By contrast, a necessary predicate to a claim that the arbitrators manifestly disregarded the law is that the arbitrators generally were vested with the authority to decide the issue or to grant the relief but ignored clearly applicable law in making that determination. Accordingly, we conclude that the trial court improperly examined under the manifest disregard of the law standard the issue of whether the award conformed to the submission.

B

We therefore consider whether the trial court properly concluded that the defendant had failed to meet its burden of proving that the award of double damages, attorney's fees and costs under § 31-72 fell outside the scope of the submission. In doing so, we are mindful that "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's

acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." *Bic Pen Corp.* v. *Local No. 134, United Rubber, Cork, Linoleum & Plastic Workers of America,* 183 Conn. 579, 585, 440 A.2d 774 (1981).

The defendant claims in its brief that "[u]nder New York law, which governs under the contract, statutory double damages are clearly punitive or exemplary, or, at a minimum, must be considered 'in the nature of' such damages." The defendant further contends that, even if Connecticut law were applicable to interpreting the parties' agreement, multiple damages, attorney's fees and costs under § 31-72 clearly are in the nature of punitive or exemplary damages. Finally, the defendant contends that the award of attorney's fees was barred expressly under the employment handbook, which was incorporated by reference into the employment agreement.

The plaintiff first responds that this issue must be determined under Connecticut law because: (1) the defendant never raised in the trial court the argument that the choice of law provision in the contract dictates that New York law govern the meaning of the agreement terms of exemplary or punitive damages, or damages "in the nature of" such damages;[8] and (2) § 31-72 is

---

[8] The plaintiff also contends that we should not consider whether the award exceeded the scope of the submission to the extent that the arbitrators may have awarded damages "in the nature of" punitive or exemplary damages because, in the trial court, the defendant never asserted that claim, only that the award constituted "punitive damages." We agree with the plaintiff that the defendant did not brief or argue expressly before the trial court that the award was "in the nature of" such damages. Nonetheless, the defendant did bring to the trial court's attention the prohibition in its entirety, and the trial court's analysis implicitly addressed whether the award was "in the nature" of punitive damages by virtue of its discussion of the purpose of § 31-72. Therefore, we consider whether the award was in the nature of punitive or exemplary damages.

a Connecticut statute, and, therefore, even New York courts would construe it in accordance with Connecticut law. The plaintiff claims that, under Connecticut law, the statutory double damages, fees and costs are not punitive or exemplary damages. The plaintiff further claims that the defendant conceded that it was subject to § 31-72 by virtue of the release the defendant had executed in satisfaction of the dispute over the plaintiff's 1996 and 1997 bonuses. Finally, the plaintiff claims that, even if the award falls outside the scope of the submission, the agreement cannot be raised as a defense to a claim under § 31-72 by the terms of that statute.

We agree with the plaintiff that this issue must be determined under Connecticut law because, at trial, the defendant failed to raise the New York choice of law provision as applied to § 31-72 and because the trial court rendered its decision solely by reference to Connecticut law.[9] We also agree with the plaintiff that the

---

[9] In its memorandum of law in support of its application to vacate the award, the defendant quoted several provisions from the employment agreement that it deemed relevant, among which was the New York choice of law provision. The defendant cited to New York law, however, only in the argument section addressing the purely contractual issue of whether the plaintiff was entitled to a bonus under the agreement. In the remainder of its memorandum addressing its three claims under § 31-72, the defendant cited only to Connecticut law. Indeed, the defendant never asserted that the contract terms of "punitive," "exemplary" or "special" damages had any particular meaning divorced from § 31-72. The defendant similarly relied only on Connecticut law as to this issue in its supplemental brief to the trial court and at oral argument. Had the defendant believed that it had asserted that the claim must be construed by applying New York law, it could have sought an articulation by the trial court.

The defendant asserts in its reply brief that the trial court's failure to apply New York law is plain error. We reject this request. First, the defendant cannot claim error that it induced the trial court to make. *State* v. *Shashaty*, 251 Conn. 768, 785–86, 742 A.2d 786 (1999) ("[w]e have long held that a party cannot ordinarily claim error in the action of the trial court which [it] has induced" [internal quotation marks omitted]), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000). Second, "[o]nly in the most exceptional circumstances will this court consider a claim that was not raised in the trial court. . . . [Finally, the defendant] failed to request plain

award of double damages was not outside the scope of the submission. We disagree, however, that the award of attorney's fees and costs conformed to the submission and that the statute precludes raising the agreement as a basis for vacating such an award.

In considering whether the award conformed to the submission, we begin by noting the obvious. First, the arbitration clause does not refer expressly to statutory damages of any kind. Nor does it state an all-encompassing exclusion, such as providing that the arbitrators are authorized to award compensatory damages only and may not award any other damages, including, but not limited to, punitive or exemplary damages. Second, the award does not expressly label the damages, fees or costs under § 31-72 as "punitive" or "exemplary" damages, and instead refers to the double damages as "additional" damages. Finally, § 31-72 itself makes no reference to punitive or exemplary damages.[10] Thus,

error review of this claim in its initial brief to this court, but, rather, raised it for the first time in [its] reply brief. It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Citation omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48 n.42, 717 A.2d 77 (1998).

[10] As the trial court properly noted, our statutes are replete with provisions for damages expressly designated as "punitive," thus suggesting that, to the extent that such a factor is relevant to this inquiry, the legislature has not deemed the double damages under § 31-72 to be punitive damages. See *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 531, 536, 839 A.2d 1250 (2004) (concluding "that the term 'any loss,' as used in § 14-52 [b] [4], is facially susceptible to more than one interpretation" and does not encompass statutory treble damages because such damages are extraordinary remedy, there was no express statutory language providing for indemnification for "punitive damages" and legislature has stated expressly when it intends to confer right to punitive damages in other statutes); compare, e.g., General Statutes § 4d-39; General Statutes § 16-8d; General Statutes § 19a-550; General Statutes § 22-351a; General Statutes § 31-51q; General Statutes § 31-290a; General Statutes § 35-53; General Statutes § 42-110g; General Statutes § 46a-98; General Statutes § 47-278; General Statutes § 52-240b. We further note that, in none of the aforementioned statutes has the legislature fixed the measures of damages as multiples of compensatory damages. But see General Statutes § 35-53 (b) (authorizing punitive damages "in an

we consider whether, in the absence of such express designations, the award under § 31-72 is, as a matter of law, punitive or exemplary damages or in the nature of such damages.

Our decision is informed by this court's decision in *Alaimo* v. *Royer*, 188 Conn. 36, 448 A.2d 207 (1982). In *Alaimo*, this court considered the defendant's claim that the trial court improperly had charged the jury that the plaintiff could recover both punitive and exemplary damages on her claims of fraud. Id., 37. Specifically, "[t]he trial court charged the jury that the plaintiff could recover four types of damages: compensation for her financial loss; compensation for her emotional distress and mental anguish; punitive damages, which include such things as [the plaintiff's] attorney's fees, and the costs and expenses of bringing the action; and exemplary damages, which are defined by statute, and are awarded where the fraud is gross and involves moral turpitude or moral culpability under General Statutes § 52-564."[11] (Internal quotation marks omitted.) Id., 41–42. This court concluded that, "[i]n distinguishing between punitive and exemplary damages and equating the latter with statutory treble damages the trial court erred." Id., 42. The court went on to explain that, under the well established rule governing the award of punitive damages, "[p]unitive damages are awarded when the evidence shows a reckless indifference to the rights

amount not exceeding twice any award made under subsection [a]" for actual damages *and* damages for unjust enrichment); General Statutes § 52-240b (authorizing punitive damages in amount "not to exceed an amount equal to twice the damages awarded to the plaintiff"). We are mindful, however, that this court has, on occasion, referred to a statutory multiple damage provision as providing punitive damages even in the absence of such express designation by the legislature. See *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 675, 607 A.2d 370 (1992) (referring to double damages under General Statutes § 47a-46 as "statutory punitive damages").

[11] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

of others or an intentional and wanton violation of those rights. . . . If awarded, they are restricted to cost of litigation less taxable costs of the action being tried and not that of any former trial. . . . Further, for an award of punitive damages it is essential that evidence of the cost of the litigation of the case being tried must be offered. . . . *Vandersluis* v. *Weil*, 176 Conn. 353, 358–59, 407 A.2d 982 (1978). Although some cases speak instead of exemplary damages, the same test is invoked and there can be little doubt that the two terms are merely alternate labels for the same remedy. . . . In forging a new and unwarranted distinction between identities, the trial court erred." (Citations omitted; internal quotation marks omitted.) *Alaimo* v. *Royer*, supra, 42–43. The court further concluded that "the definition of punitive damages provided by *Vandersluis* v. *Weil*, supra, [358–59] precludes the trial court's equation of exemplary and statutory damages . . . ." Id., 43.

Thus, *Alaimo* makes clear that punitive damages and exemplary damages are one and the same under Connecticut law. See id., 42–43; see also *Matthiessen* v. *Vanech*, 266 Conn. 822, 826 n.5, 836 A.2d 394 (2003) ("[punitive] damages also are known as 'exemplary' damages"). It further stands for the proposition that punitive damages are not equivalent to statutory multiple damages because of, inter alia, the different type of relief available under each.[12] See *Alaimo* v. *Royer*,

[12] We disagree with the defendant's argument that the same type of conduct is required for double damages under § 31-72 as is required for common-law punitive damages. Compare *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 269, 828 A.2d 64 (2003) (double damages under § 31-72 may be awarded only upon finding of "bad faith, arbitrariness or unreasonableness" [internal quotation marks omitted]) with *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 335, 852 A.2d 703 (2004) (common-law punitive damages awarded for "wanton or wilful malicious misconduct"); *Alaimo* v. *Royer*, supra, 188 Conn. 42 (common-law "[p]unitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights" [internal quotation marks omitted]).

supra, 188 Conn. 43; see also *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 285, 472 A.2d 306 (1984) (concluding that plaintiff was entitled to recover compensatory damages, exemplary damages and statutory treble damages).

The latter conclusion is bolstered by the Appellate Court's decision in *Caulfield* v. *Amica Mutual Ins. Co.*, 31 Conn. App. 781, 786 n.3, 627 A.2d 466, cert. denied, 227 Conn. 913, 632 A.2d 688 (1993), concluding that an insurance policy exclusion for punitive and exemplary damages did not encompass statutory multiple damages under General Statutes § 14-295, which provides for double or treble damages for personal injury, wrongful death or property damage resulting from certain traffic violations. The court reasoned that, "[u]nder Connecticut common law, the terms 'exemplary damages' and 'punitive damages' are interchangeable labels for damages awarded under certain circumstances to compensate a plaintiff for his expenses of litigation. *Alaimo* v. *Royer*, [supra, 188 Conn. 42–43]. It is well settled, however, that statutory multiple damages awarded pursuant to § 14-295, while serving a similar punitive purpose . . . are separate and distinct from common law punitive damages and are awarded in addition thereto in appropriate cases. [Id.], 43; see *Gionfriddo* v. *Avis Rent A Car System, Inc.*, [supra, 192 Conn. 285]. *The policy exclusions for punitive and exemplary damages are therefore ambiguous, at best, as to whether they encompass statutory multiple damages pursuant to § 14-295.*" (Citations omitted; emphasis added.) *Caulfield* v. *Amica Mutual Ins. Co.*, supra, 786 n.3.

Indeed, the Appellate Court's view is in accord with that of every other court our research has uncovered that has addressed the specific question before this court, in each case concluding that a submission prohibiting an award of punitive or exemplary damages was ambiguous as applied to statutory multiple damages.

See *Pacificare Health Systems, Inc.* v. *Book*, 538 U.S. 401, 405–407, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003) (treble damages for violation of Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 et seq., not barred by submissions that precluded award of punitive, exemplary or extracontractual damages); *Investment Partners, L.P.* v. *Glamour Shots Licensing, Inc.*, 298 F.3d 314, 317–18 (5th Cir. 2002) (treble damages for violation of Clayton Act, 15 U.S.C. § 15, not barred by submission precluding award of punitive damages); *In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F. Sup. 2d 1107, 1127 (D. Kan. 2003) (treble damages for violation of Clayton Act not precluded; court held that version of terms and conditions of defendant communications provider "does not expressly ban treble damages . . . [r]ather, it states that [the defendant] is not liable for 'punitive or exemplary damages' ").

The reasoning of these courts further suggests that the question of whether statutory multiple damages could be considered "in the nature of" punitive damages is questionable for two reasons. First, the United States Supreme Court noted its hesitancy in rejecting the arbitrator's authority to render such an award given that the court previously had designated certain statutes providing multiple damages as purely remedial, while treating others as strictly punitive. See *Pacificare Health Systems, Inc.* v. *Book*, supra, 538 U.S. 406 ("[i]n light of our case law's treatment of statutory treble damages, and given the uncertainty surrounding the parties' intent with respect to the contractual term 'punitive,' the application of the disputed language to [the] respondents' RICO claims is, to say the least, in doubt"). Second, akin to this court's reasoning in *Alaimo* v. *Royer*, supra, 188 Conn. 42–43, the Fifth Circuit Court of Appeals noted the substantive differences between the type of relief and the circumstances under

which the relief is awarded.[13] See *Investment Partners, L.P.* v. *Glamour Shots Licensing, Inc.*, supra, 298 F.3d 317–18 (distinguishing statutory multiple damages and common-law punitive damages in that conditions for assessment of statutory damages are more circumscribed and provide less discretion than conditions for assessment of punitive damages). Although we recognize that we are not bound by these cases, we find them persuasive.

The statutory double damages awarded in the present case provide substantially different relief than that

[13] Indeed, the Fifth Circuit recognized that multiple damages can be "punitive" in some contexts, but not for purposes of interpreting an arbitration clause and an ensuing award, and thus rejected as significant in the arbitration context other case law referring to treble damages as punitive. The Court of Appeals held: "First, the task in this case is to construe 'punitive' in a private parties' arbitration agreement, which the Supreme Court has clearly said we interpret broadly to permit arbitration as far as possible. Second, it makes sense to draw a distinction, from the standpoint of the parties' expectations when they entered the arbitration agreement, between statutory treble damages and common law punitive damages. That is, punitive damages are awarded under notoriously open-ended legal standards and a broadly defined constitutional limit concerning the amount awarded. Treble damages, however, represent a mere mathematical expansion of the actual damages calculated by the arbitrator. While private parties might well exclude common law punitive damages, with all their uncertainty, from the arbitrator's authority, the riskiness of committing antitrust damages to the arbitrator is much smaller. Thus, antitrust treble damages may indeed be 'punitive' simply because they exceed the actual damages that have been inflicted on the victim of violative conduct, but they are not 'punitive' for purposes of interpreting the scope of an arbitration clause." *Investment Partners, L.P.* v. *Glamour Shots Licensing, Inc.*, supra, 298 F.3d 317–18; see also *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635–36, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ("Notwithstanding its important incidental policing function, the treble-damages cause of action conferred on private parties by § 4 of the Clayton Act . . . seeks primarily to enable an injured competitor to gain compensation for that injury. Section 4 . . . is in essence a remedial provision. . . . Of course, treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing . . . . It nevertheless is true that the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy." [Internal quotation marks omitted.]).

available for common-law punitive damages, which are limited to attorney's fees and costs. Moreover, it is clear that the purpose of damages under § 31-72 extends beyond that afforded by common-law punitive damages, which are intended to do no more than make the litigant whole. See *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 335, 852 A.2d 703 (2004) ("[l]imiting punitive damages to litigation expenses, including attorney's fees, fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury" [internal quotation marks omitted]); *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992) (common-law punitive damages "serve primarily to compensate the plaintiff for his injuries and, thus, are . . . limited to the plaintiff's litigation expenses less taxable costs"); *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 538, 18 A.2d 357 (1941) ("[u]nder our law the purpose of awarding so-called punitive damages is not to punish the defendant for his offense but to compensate the plaintiff for his injuries, and they cannot exceed the amount of the plaintiff's expenses of litigation less taxable costs" [internal quotation marks omitted]).

Although the defendant relies on select legislative history to § 31-72 that we have construed as indicating that the statute has a punitive purpose;[14] see *Shortt* v.

---

[14] Specifically, the defendant points to comments made by then Senator Nancy L. Johnson in committee hearings, held in 1978 to amend § 31-72 to increase the penalties on employers. Senator Johnson stated: "The penalty for non-payment of wages is set forth in [§] 31-72. An unpaid employee must bring suit in court and if he or she wins, he or she recovers wages and [court] costs. This is hardly a sufficient penalty for so serious an offense as non-payment of wages. In fact, the employer loses nothing but court costs, while the employee has to bring a suit and go without earned wages for months or years." Conn. Joint Standing Committee Hearings, Labor and Industrial Relations, 1978 Sess., pp. 154–55. Although this court construed Senator Johnson's comments to indicate that "a primary purpose [of the 1978 amendment] was to penalize the employers"; *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 309 n.13, 562 A.2d 7 (1989); the court did so

*New Milford Police Dept.*, 212 Conn. 294, 309 n.13, 562 A.2d 7 (1989) (interpreting joint standing committee hearing remarks by legislator as indicating that "a primary purpose [of the 1978 amendment providing double damages] was to penalize the employers"); this court has indicated that the statute serves *both* a remedial and punitive or deterrent purpose. See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 272, 828 A.2d 64 (2003) ("we previously have acknowledged the punitive and remedial purposes of § 31-72"); *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 463, 704 A.2d 222 (1997) (concluding that broader interpretation of term "employer" under § 31-72 "effectuates the statutory policies of compensating employees and deterring employers from failing to pay wages"); *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 696, 651 A.2d 1286 (1995) ("[t]he purpose of § 31-72 is remedial, and therefore it must be given a liberal construction in favor of those whom the legislature intended to benefit").

Therefore, we conclude that the submission's limitation on an award of "punitive damages," or "damages in the nature of punitive damages," is ambiguous with respect to whether the contract provision was designed to exclude the double damages provided for under § 31-72. To justify vacating an award, however, we must determine that the award *necessarily* falls outside the scope of the submission. See *United Paperworkers*

specifically in the context of determining whether a plaintiff could pursue an action under § 31-72 without first establishing his entitlement to uncollected wages through the grievance procedures set forth in the collective bargaining agreement. Id., 299–300. The court concluded that § 31-72 is "a remedial statute rather than one creating independent substantive rights"; id., 309; and, thus, the plaintiff would be required first to exhaust the requisite collective bargaining procedures for grievance proceedings and arbitration to establish a right to the unpaid wages. Id., 305–309. Moreover, the court concluded that deterrence was *a* purpose of the statute, not *the* purpose. Id., 309 and n.13.

*International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision"). Here, the ambiguity as to the parties' intent precludes such a result. See *Providence Journal Co.* v. *Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001) ("court's task 'is limited to determining if the arbitrator's interpretation of the contract is in any way plausible' "); *American Postal Workers Union, AFL-CIO, Milwaukee Local* v. *Runyon*, 185 F.3d 832, 835 (7th Cir. 1999) ("[t]he arbitrator's interpretation of the scope of the issue must be upheld so long as it is rationally derived from the parties' submission"). Therefore, we conclude that the award of double damages under § 31-72 did not exceed the scope of the submission.[15]

We reach a different result, however, applying the reasoning above to the award of attorney's fees and costs.[16] The attorney's fees and costs provide the same

---

[15] The defendant asserts in the alternative a claim that the arbitrators manifestly disregarded the law by awarding the double damages, pointing again to the limitation on remedies in the submission. In light of our rejection in part I B of this opinion of the same argument with respect to the defendant's claim that the award of double damages under § 31-72 did not conform to the submission for that same reason and the absence of any additional argument or authority, we need not engage in any additional analysis to resolve this alternative claim.

[16] The plaintiff claims that we should not consider whether the trial court properly confirmed the award with respect to attorney's fees and costs because the defendant did not raise those claims below. We disagree. In its application to vacate, the defendant asserted that the award of double damages, attorney's fees and costs under § 31-72 were punitive and that, under the parties' agreements, the plaintiff had waived his right to seek any punitive damages, attorney's fees and costs. The trial court's memorandum of decision stated that the defendant was challenging the award as to all three elements. Although not expressly stated, we construe the trial court's rejection of the defendant's challenge to the double damages as dispositive of the challenge to the related fees and costs awarded pursuant to that same statute.

relief and serve the same function as would be afforded by common-law punitive damages. See *Berry* v. *Loiseau*, supra, 223 Conn. 827 (attorney's fees are element of punitive damages); *Tedesco* v. *Maryland Casualty Co.*, supra, 127 Conn. 538 (same). It is clear, therefore, that they are "in the nature of" punitive damages. Accordingly, the award of attorney's fees and costs exceeded the scope of the submission and must be vacated.

C

In light of that conclusion, we must consider the plaintiff's contention that § 31-72 bars raising a private agreement as a defense to an action under the wage collection statute. Specifically, the plaintiff relies on the first sentence of the statute, which provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, *and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. . . .*" (Emphasis added.) General Statutes § 31-72. We disagree with the meaning ascribed by the plaintiff to this prohibition.

The statutory prohibition is not directed at an agreement that ostensibly waives the right to pursue an action under it. The prohibition in § 31-72 is directed specifically at an agreement for the "payment of wages *other than as specified*" in certain statutes, ones that dictate the frequency, timing and method by which an employer must pay its employees. (Emphasis added.) See, e.g., General Statutes § 31-71b (requiring weekly

payment on regular payday); General Statutes § 31-71c (requiring payment of wages on next regular payday upon voluntary termination or suspension and on next business day upon discharge). Indeed, General Statutes § 31-71i provides the sole method for deviating from those requirements, authorizing the labor commissioner to waive, upon application by an employer, the prescribed timing for payment of wages. Thus, the statute simply bars an employer from raising as a defense to an action alleging wrongful withholding of wages under § 31-72 that the employee has executed a contract agreeing to a different method or timing of the payment of wages in the absence of a waiver from the labor commissioner.[17] Accordingly, the defendant is not barred by § 31-72 from asserting the employment agreement as a ground for vacating the award.[18]

---

[17] We note that, at oral argument before the trial court, the defendant proffered the same construction of the statute that the plaintiff has in this appeal, when contending that the plaintiff was required to bring its claim under § 31-72 in the Superior Court, rather than in arbitration because the statute authorizes a "civil action." Specifically, the defendant asserted that it would be barred under § 31-72 from raising the employment agreement as a defense to an action in the trial court. At oral argument before this court, however, having abandoned by not briefing its claim that arbitration is not a "civil action" within the meaning of § 31-72, the defendant asserted a contradictory interpretation of the statute, namely, that the bar on raising private agreements does not apply to this type of claim. Because the plaintiff invoked the statute as a defense, we are required to interpret it de novo. We note, however, our disapproval of the defendant's conduct in improperly asserting contradictory interpretations of a statute in the same case to advance its interests.

[18] We also are compelled to reject the plaintiff's contention that the award under § 31-72 cannot be vacated under § 52-418 (a) (4) in light of the release that the parties executed in satisfaction of a dispute over payment of the plaintiff's 1996 and 1997 annual bonuses, which expressly required that the plaintiff forgo a claim under § 31-72. The plaintiff contends, as he did before the trial court, that this release constituted an admission by the defendant that damages under § 31-72 were not "punitive damages" within the meaning of the arbitration clause. Whatever the merits arguably might be to such a claim, the arbitrators did not indicate that the release was the basis on which they rendered the award. Although we might be able to consider that issue if the arbitrators expressly had made findings in support of such a determination in a memorandum of decision; see footnote 6 of this opinion;

## II

The defendant next asserts that the arbitrators manifestly disregarded the law by awarding damages under § 31-72 because the plaintiff's bonuses are not "wages" within the meaning of that statute. Under this highly deferential standard, the defendant has the burden of proving "three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 95. "[T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) Id. It is clear that the defendant cannot overcome this high hurdle.

The defendant cites several trial court cases stating that a bonus is considered a "wage" only if it compensates the employee for his or her personal efforts alone as evidence that the arbitrators manifestly disregarded the law. This claim merits little discussion. The law allegedly ignored by the arbitration panel cannot be considered "well defined, explicit, and clearly applica-

---

the arbitrators did not do so. Accordingly, under our well established case law, we are limited to a comparison of the award to the submission, and we may not speculate as to possible reasons that the arbitrators may have concluded that express limitations on their authority did not apply in the present case.

ble"; (internal quotation marks omitted) *Garrity* v. *McCaskey*, supra, 223 Conn. 9; "[if] the parameters of the . . . [applicable statute] have never been addressed by this court or the Appellate Court." *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 307, 680 A.2d 1274 (1996). Moreover, as the defendant itself properly noted at the hearing before the trial court, the cases it relies on indicate that the relevant determination is to be made "on a case-by-case basis . . . ." Therefore, it cannot be said that the arbitrators ignored clearly applicable law.

### III

Finally, we turn to the defendant's claim that the trial court improperly determined that the arbitrators had not manifestly disregarded the law in awarding compensatory damages for the plaintiff's 1999 bonus. The defendant contends that the arbitrators manifestly disregarded the law by awarding the 1999 bonus because: (1) the agreement conditions payment of bonuses on being employed at the time the bonus is payable, and the plaintiff's employment had been terminated at the time the bonus was due; (2) the plaintiff provided no benefit to the defendant that would entitle him to the bonus; and (3) the case law relied on by the trial court holding that an employer cannot breach an agreement to avoid paying amounts due for past services are inapplicable.

The plaintiff contends, and we agree, that the defendant's claim is predicated largely on the arbitrators' interpretation of the agreement and factual findings regarding the plaintiff's termination and the defendant's intent. Indeed, the agreement reflects a patent ambiguity as to whether it unilaterally bars payment of compensation already earned but not yet paid if the employee

no longer is employed at the time payment is due.[19] As we noted previously, these issues are beyond the scope of our review. See *Bic Pen Corp.* v. *Local No. 134, United Rubber, Cork, Linoleum & Plastic Workers of America,* supra, 183 Conn. 584 ("[w]here the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous" [internal quotation marks omitted]).

Moreover, although the defendant attempts to distinguish factually the cases relied on by the trial court, it has offered no case law to support directly its contention. Indeed, one of the cases cited by the trial court, *Butler* v. *Cadbury Beverages, Inc.,* United States District Court, Docket No. 3:97CV2441, 1999 U.S. LEXIS 16098 (D. Conn. June 29, 1999), stands for precisely the legal argument asserted by the plaintiff—namely, that an employer may be liable under § 31-72 for failing to pay a bonus, irrespective of whether the employment agreement required that the employee still be in the defendant employer's employment at the time payment is due, if it is found that the employee's termination substantially was motivated by the desire to avoid pay-

---

[19] Section 3 (f) of the agreement provides: "All compensation shall be payable only if Employee is employed by [the defendant] or an Affiliate at the time payment is made. Employee agrees that any compensation paid to Employee subsequent to the termination of Employee's employment with [the defendant] shall only be paid upon execution by Employee of a general unconditional release in favor of [the defendant] in a form satisfactory to [the defendant]." Thus, although the first sentence appears to unequivocally bar any payment of compensation to an employee who is no longer employed by the defendant at the time payment is due, the second sentence indicates that such payment shall be made, but conditioned upon execution of a release. Moreover, we note serious questions as to the enforceability of the provision under the defendant's construction, as the refusal to pay wages that were earned but not due to be paid until after the employee's employment had been terminated would seem to violate public policy.

ment of the bonus. Id., *8–14. Therefore, the defendant has failed to establish that the arbitrators ignored "well defined, explicit, and clearly applicable" law. (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 9.

The judgment is affirmed in part and reversed in part, and the case is remanded to the trial court with direction to grant the defendant's application to vacate the award with respect to attorney's fees and costs.

In this opinion the other justices concurred.