SALOMON SMITH BARNEY, INC., ET AL. *v.*
JERRY COTRONE
(AC 23545)

Lavery, C. J., and Dranginis and Bishop, Js.

Argued January 8—officially released March 2, 2004

*Christopher C. L. Hooper*, with whom, on the brief, were *Brent M. Stratton* and *Arthur L. Ledford*, for the appellant (defendant).

*John R. Snyder*, with whom, on the brief, was *Stewart E. Newman*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. This is an appeal by the defendant, Jerry Cotrone, from the judgment of the trial court granting the application filed by the plaintiffs, Salomon Smith Barney, Inc. (Salomon), and its financial advisor-employee, Mijanou M. Spurdle, to compel arbitration of the defendant's claim against the plaintiffs. We affirm the judgment of the trial court.

On appeal, the defendant has asserted several claims that fairly can be summarized as follows: (1) the purported agreement between him and Salomon was unsigned and, therefore, does not comply with the prerequisites of General Statutes § 52-408 for enforcement; and (2) the purported agreement, even if signed, is invalid. As to the latter claim, the defendant asserts that the contract is ambiguous and violates good faith

and fair dealing, that he was deceived by Spurdle as to the effect of the agreement, that the agreement does not comport with the requirements of the New York Stock Exchange and the National Association of Securities Dealers for contracts between brokerage houses and their clients, and, finally, that the agreement is a contract of adhesion.[1]

At the outset, we note that the court's order compelling arbitration is a final judgment from which an appeal lies. See *Smith & Smith Building Corp.* v. *DeLuca*, 36 Conn. App. 839, 841, 654 A.2d 368 (1995). Thus, we have jurisdiction to determine the issues on appeal.

The following procedural and factual background sets the context for our discussion of the defendant's appeal. On July 1, 2002, the plaintiffs filed an application to compel arbitration against the defendant in which they alleged, inter alia, that he had been a customer who had maintained a securities account with Salomon and that Spurdle, an employee of Salomon, had been his financial consultant; the defendant had executed an "account application and client agreement" (agreement) with Salomon; the agreement contained an arbitration clause pursuant to which the defendant had agreed to arbitrate "all claims or controversies" concerning or arising from any of his accounts or any transactions with Salomon, and including any disputes with any employees of Salomon; and despite the agreement to arbitrate, the defendant had commenced an action against the plaintiffs in the Superior Court concerning a dispute arising out of the parties' business relationship. On the basis of the agreement, the plaintiffs sought an order in this action, directing the defendant to proceed, in compliance with the terms of the agreement and pursuant to 9 U.S.C. § 4 and General

---

[1] The defendant initially claimed that the contract was illegal because it specifically precludes actions for punitive damages. At oral argument, counsel for the plaintiff withdrew that claim.

Statutes § 52-410, with arbitration of the claims that he had asserted in his action. Subsequently, after oral argument and the submission of affidavits and the agreement, the court granted the plaintiffs' application to compel arbitration. This appeal followed.

We begin by observing that § 52-408 evinces a public policy favoring arbitration as a vehicle for dispute resolution. It provides in relevant part that "[a]n agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . to arbitrate any controversy which may arise between them in the future . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

General Statutes § 52-410 (a) provides for the enforcement of such agreements. It provides in relevant part that "[a] party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . ." When confronted with such an application, the task of the court is to determine whether the parties did, in fact, enter into an agreement and whether the agreement provides for arbitration. See *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 770, 613 A.2d 1320 (1992). Additionally, the issue of whether the parties to a contract have agreed to arbitration implicates their intention, an issue of fact for the court's determination. *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 608–609, 577 A.2d 709 (1990). Consequently, a court's finding on the factual question of whether the parties to a contract have

agreed to arbitration is subject to review under the clearly erroneous standard. Id., 609.

The defendant first claims that the purported agreement is invalid on the ground that he did not sign the agreement and, thus, it was not in writing. It is well established that for an agreement to arbitrate to be enforceable, it must be in writing. *Bennett* v. *Meader*, 208 Conn. 352, 361, 545 A.2d 553 (1988). In this instance, the record reflects that on November 9, 1999, the defendant signed the four page, consecutively paginated document on the second page. Directly above his signature, the following is printed: "I acknowledge that I have received the Client Agreement which contains a pre-dispute arbitration clause in section 6." Section six of the agreement, set out in bold type on page three, is captioned "arbitration." It provides for final and binding arbitration of any claims arising out of the parties' business relationship.

Although the defendant acknowledges that he signed the document on page two, he asserts that he did not, in fact, sign the arbitration agreement set forth on page three of the document. In essence, he claims that the four page document was, in fact, two separate two page documents, the first part being the application and the latter part being the actual agreement. Thus, he argues, he signed only the account application and not the agreement itself. We are not persuaded.

Even if the defendant's construction of the four-page document is correct, his signature on page two of the document suffices to bind him to the arbitration provision on the following page. As correctly noted by the plaintiffs, "[W]here . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as

the agreement of the parties." (Internal quotation marks omitted.) *Lamb* v. *Emhart Corp.*, 47 F.3d 551, 558 (2d Cir. 1995) (applying Connecticut law); *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 7, 110 A.2d 464 (1954). The court therefore correctly determined that the agreement to arbitrate was in writing.

The defendant claims alternatively that even if he signed the agreement, it is invalid for a myriad of reasons, as previously noted. We find none of the reasons proffered by the defendant to elude his obligation to arbitrate his claims against the plaintiffs to be persuasive. His claim that the agreement is ambiguous is patently without merit. Contrary to his assertion, the arbitration language in § 6 is clear, direct and unequivocal.

The defendant's claim that the contract violates the plaintiffs' duty of good faith and fair dealing appears to be premised on his assertion that he had been friendly with the financial adviser before signing the agreement and that he signed the agreement without fully reading it and understanding its terms. The short answer to that claim is that the record is devoid of any factual or legal support from which the court or we could determine that the agreement to arbitrate violated the defendant's right to be treated fairly and in good faith. Similarly, the defendant's claim that he was deceived as to the effect of the agreement finds no support in the record. Additionally, whether the agreement to arbitrate fully comports with the procedural requirements of the New York Stock Exchange is not material to the issue of whether the agreement, as a contract, is enforceable.[2]

---

[2] The defendant claims specifically that the agreement violates the New York Stock Exchange rule requiring that on an account application and agreement, there must be notice of an arbitration clause together with notice of the page of the agreement containing the arbitration clause above the signature line. In this instance, there is notice of the arbitration clause above the signature line, but with reference to its section number rather than to the page on which the arbitration clause is found in the agreement.

Last, we agree with the reasoning of those cases that have held that the question of whether the entire agreement containing an arbitration provision is a contract of adhesion is one for an arbitrator's determination and not, at this juncture, one for judicial review. See, e.g., *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Haydu*, 637 F.2d 391, 398 (5th Cir. 1981); *Shotto* v. *Laub*, 632 F. Sup. 516, 522 (D. Md. 1986).

The judgment is affirmed.

In this opinion the other judges concurred.