WILLIAM ALEXSON ET AL. *v.*
JANET FOSS ET AL.
(SC 17365)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

600

Argued October 24, 2005—officially released January 10, 2006

*Steve P. Kulas,* with whom was *Prescott W. May,* for the appellant (named plaintiff).

*William A. Conti,* with whom, on the brief, was *Dina M. Menchetti,* for the appellees (defendants).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether the parties' failure to comply with General

Statutes § 47-28[1] by recording in the town clerk's office their agreement to arbitrate a land dispute, as well as the subsequent arbitration award, deprived the arbitrator, and subsequently the trial court, of subject matter jurisdiction over this case. The named plaintiff, William Alexson, appealed[2] from the judgment of the trial court confirming an arbitration award that resolved a dispute between himself and Bertha Alexson and multiple defendants[3] over ownership interests in a parcel of land that is situated in Bethlehem and Woodbury. On appeal, the plaintiff claims that the trial court improperly denied the Alexsons' application to vacate the award and granted the defendants' motion to confirm the award because: (1) neither the arbitrator nor the trial court had subject matter jurisdiction under § 47-28; and (2) the arbitrator's award was void under General Statutes § 52-418 (a)[4] because the arbitrator was partial, and the

[1] General Statutes § 47-28 provides: "No award of arbitrators, made since May 20, 1841, purporting to decide the title to real estate, shall be admissible as evidence thereof, unless the submission of the parties to such arbitration is executed, attested and acknowledged as deeds of lands, nor unless such award is in writing and under the hands and seals of the arbitrators; and such submission and award shall not be effectual against any persons but the parties to the same and their heirs, unless recorded by the town clerk of the town where such estate is situated."

[2] The named plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Bertha Alexson was also a plaintiff in the underlying action but is not a party to this appeal. Hereafter, we refer in this opinion to William Alexson as the plaintiff, and to William Alexson and Bertha Alexson collectively as the Alexsons.

The defendants in this proceeding are Janet Foss, Helen Andronaco, Mary Susan Farcas, Anna May Jerusavage, John A. Fanning and Anthony Fanning.

[4] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient

award was both incomplete and in manifest disregard of the law. We disagree with the plaintiff's claims and, accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In November, 1999, the defendants brought an action to quiet title against the Alexsons seeking to determine the ownership interests in a 4.3 acre parcel of land that was located in Bethlehem and Woodbury. In September, 2002, the parties settled that action by entering into an arbitration agreement that appointed Attorney Franklin Pilicy to hear evidence and decide finally all issues in the case. Subsequently, by letter dated January 5, 2004, the parties amended the submission to include an adjacent 2.2 acre parcel of land. After hearing five days of testimony, receiving exhibits and walking the property, the arbitrator concluded in an award issued in May, 2004, that the defendants had proven by a preponderance of the evidence that they were the record title owners of the 4.3 acre parcel, and that the Alexsons did not prove by clear and positive proof that they had adversely possessed the 4.3 acre parcel. With respect to the 2.2 acre parcel, the arbitrator concluded that neither party had proven record title ownership, but that the Alexsons had demonstrated by clear and positive proof that they were the exclusive owners of that parcel by adverse possession. The arbitrator ordered the defendants to "cause to be prepared a [m]ylar [m]ap suitable for recording on the land records of Bethlehem and Woodbury to clearly show the disputed land 4.3 [acre] parcel now owned by the [defendants] and the [2.2 acre parcel] now owned by the [Alexsons]. The [m]ap should contain

cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

the caption for this case, reference the [a]greement for [a]rbitration and this [a]rbitrator's award."

Thereafter, the Alexsons filed an application to vacate the arbitration award. The defendants then objected to the application, and filed their own motion to confirm the award. At the hearing before the trial court, the Alexsons argued that the arbitrator had not been impartial. They also argued that the arbitrator had departed from the terms of the submission by dividing the property. The trial court rejected their claims of partiality as attempts to relitigate the merits of the case, and concluded that the award both conformed to the unrestricted submission and was not in manifest disregard of the law. Accordingly, the trial court denied the Alexsons' application to vacate the award and granted the defendants' motion to confirm the award, and rendered judgment accordingly. This appeal followed.

I

WHETHER THE PARTIES' FAILURE TO COMPLY WITH § 47-28 DEPRIVED THE ARBITRATOR AND THE TRIAL COURT OF SUBJECT MATTER JURISDICTION

We begin with a threshold matter, namely, the plaintiff's claim that neither the arbitrator nor the trial court had subject matter jurisdiction over the dispute because of the parties' failure to comply with the provisions of § 47-28 that require arbitration agreements and awards, in order to affect an interest in land, to be executed with the same formality as a deed, to be written under the hand and seal of the arbitrator, and to be recorded in the appropriate town clerk's office. The plaintiff contends that the agreement is a nullity and does not comply with § 47-28 because it was not executed with the formalities of a deed, and the arbitrator merely signed the award rather than executing it under hand and seal. The plaintiff also claims that the award improperly

directed the filing of a Mylar map with the town clerk, rather than the award itself.

The defendants contend in response that compliance with § 47-28 is not subject matter jurisdictional with respect to the present case, but rather addresses the enforceability of the award against third parties. The defendants also argue that the signatures of the Alexsons themselves were not necessary because they assented to the agreement through their participation in the process, and it was signed by their attorney. The defendants also contend that the plaintiff waived his claims with respect to the hand and seal requirements by not raising them in the trial court and inadequately briefing them on appeal.

We note at the outset that the plaintiff failed to raise his § 47-28 claims before the trial court. Although this ordinarily would preclude us from reaching these claims, questions of subject matter jurisdiction may be raised at any time, including on appeal. See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441–42, 870 A.2d 448 (2005); see also *Bennett* v. *Meader*, 208 Conn. 352, 364, 545 A.2d 553 (1988) ("[t]he authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment"). "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, supra, 441.

In the present case, the plaintiff's contentions require us to determine whether compliance with § 47-28 implicates the subject matter jurisdiction of the arbitrator and the trial court that is asked to confirm the arbitrator's award. This poses "an issue of statutory construction over which our review is plenary. . . . 'It is well settled that in construing statutes, [o]ur fundamental

objective is to ascertain and give effect to the apparent intent of the legislature' . . . and that '[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' General Statutes § 1-2z." (Citations omitted.) *Wallingford* v. *Werbiski*, 274 Conn. 483, 489, 877 A.2d 749 (2005).

Starting, as we must, with the language of the statute, § 47-28 provides: "No award of arbitrators, made since May 20, 1841, purporting to decide the title to real estate, shall be admissible as evidence thereof, unless the submission of the parties to such arbitration is executed, attested and acknowledged as deeds of lands, nor unless such award is in writing and under the hands and seals of the arbitrators; *and such submission and award shall not be effectual against any persons but the parties to the same and their heirs*, unless recorded by the town clerk of the town where such estate is situated." (Emphasis added.)

"The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004). The plaintiff's contention that the award is a nullity absent compliance with the statutory terms is a reasonable reading of the text of § 47-28, particularly given the arguably contradictory language in the two separate clauses of the statute. The language in § 47-28 referring to the enforceability of the award against the "parties to the same and their heirs" conceivably could apply only to the discrete situation of an *unrecorded* submission and award, and not save a submission or award not *executed* in accordance with

General Statutes § 47-5,[5] which governs the conveyance of lands. The defendants' reading of the statute, however, as having no impact on the subject matter jurisdiction of the arbitrator also is reasonable, particularly given the statute's textual distinction between the award merely as admissible evidence of the title to land, and its effectiveness against the parties to a land dispute. Accordingly, we conclude that this statute is ambiguous and, therefore, we may resort to extratextual evidence in determining its meaning.

We next turn to an examination of the legislative genealogy and history of § 47-28. Section 47-28 has existed without substantive change since its original enactment in 1841 as chapter 31, §§ 1 through 3 of the 1841 Public Acts.[6] Unfortunately, there is no printed legislative history from that time in our state's history to provide a source of insight into the meaning of the statute. Accordingly, we construe § 47-28 in light of other public policy considerations, including the well-

---

[5] General Statutes § 47-5 provides: "(a) All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor is a corporation, limited liability company or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands.

"(b) In addition to the requirements of subsection (a), the execution of a deed or other conveyance of real property pursuant to a power of attorney shall be deemed sufficient if done in substantially the following form:

"Name of Owner of Record
"By: (Signature of Attorney-in-Fact) L.S.
"Name of Signatory
"His/Her Attorney-in-Fact

"(c) Nothing in subsection (b) precludes the use of any other legal form of execution of deed or other conveyance of real property."

[6] Section 47-28 began to take on its present form with the 1875 revision to the General Statutes, which reduced it from three sections to one paragraph, and reworded the statute largely as it appears today. See General Statutes (1875 Rev.) c. 6, pt. 1, § 23.

defined public policies that favor arbitration as an alternate dispute mechanism, as well as the settlement of disputes. See, e.g., *Robinson* v. *Gailno*, 275 Conn. 290, 306, 880 A.2d 127 (2005) ("our [p]ublic policy . . . favors and encourages the voluntary settlement of civil suits" [internal quotation marks omitted]); *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 71, 856 A.2d 364 (2004) ("Connecticut has adopted a clear public policy in favor of arbitrating disputes").

Having considered § 47-28 in the context of the statutory schemes governing titles to land and arbitration, we conclude that § 47-28 is a recording statute, compliance with which is not a prerequisite to the subject matter jurisdiction of an arbitrator resolving a land title dispute. There is nothing in the language of the statute that indicates explicitly that it is *jurisdictional* in nature with respect to the parties to the dispute. Indeed, quite to the contrary, the statute explicitly provides that failure to record results in the submission and award remaining "effectual" only as to "the parties to the same and their heirs . . . ." General Statutes § 47-28. This is an indication that the statute's terms are not jurisdictional in nature as between the parties to the initial dispute, and that the failure to record or follow the directives of § 47-5 affects the award only as it relates to third parties.

Moreover, the existence of General Statutes § 47-36aa,[7] which provides a mechanism for curing certain

---

[7] General Statutes § 47-36aa provides in relevant part: "(a) Conveyancing defects. Any deed, mortgage, lease, power of attorney, release, assignment or other instrument made for the purpose of conveying, leasing, mortgaging or affecting any interest in real property in this state recorded after January 1, 1997, which instrument contains any one or more of the following defects or omissions is as valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded:

"(1) The instrument contains a defective acknowledgment or no acknowledgment;

defects in instruments affecting interests in real property, including defective acknowledgments or a lack of attesting witnesses, strongly suggests that compliance with § 47-28 does not affect the subject matter jurisdiction of the arbitrator. That these defects are cured automatically by statute, in the absence of a timely filed action specifically challenging the validity of the instrument and a timely filed lis pendens, indicates that compliance is not subject matter jurisdictional.[8]

Finally, our conclusion that failure to comply with § 47-48 does not deprive the arbitrator of subject matter jurisdiction with respect to the parties to the dispute is consistent with the well settled principle that an arbitrator derives his or her jurisdiction from the terms of the written submission and the mutual assent of the parties. See General Statutes § 52-408;[9] *Bennett* v.

"(2) The instrument is attested by one witness only or by no witnesses . . . ."

[8] The plaintiff relies extensively on *Parmelee* v. *Allen*, 32 Conn. 115, 116 (1864), in support of the proposition that § 47-28 is subject matter jurisdictional. Specifically, the plaintiff relies on language stating that "[t]here is no doubt that since the passage of the act referred to such an award does not pass the title, and does not preclude the owner from claiming it." Id. Although the statute is relatively unchanged since that time; see footnote 6 of this opinion; *Parmelee* is of little help in the present case because the opinion does not specify the manner in which the parties did not comply with the statute in that case. Moreover, although *Parmelee* v. *Allen*, supra, 116, acknowledges the "favor" given to arbitration that continues to this day, it predates, by more than 125 years, § 47-36aa, the validation statute, which was not enacted until 1999. See Public Acts 1999, No. 99-238, § 4. Thus, to the extent that *Parmelee* stands for the proposition that compliance with § 47-28 is a prerequisite to the arbitrator's subject matter jurisdiction to a land dispute as between the parties, it is overruled.

[9] General Statutes § 52-408 provides: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to

*Meader*, supra, 208 Conn. 359, 363 (concluding that, under § 52-408, "only written agreements to arbitrate are valid," and that "[i]t is from the submission alone that the arbitrator receives his or her authority"); *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 449, 664 A.2d 819 (1995) ("[b]ecause the writing provision contained in . . . § 52-408 was completely satisfied, the trial court had subject matter jurisdiction" over application to confirm award); cf. *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 75 (claim that construction contract is unenforceable because of failure to comply with statutory requirements was "within the scope of the arbitration clause and must be decided initially by the arbitrator" when arbitration clause itself "[was] in writing, as required under . . . § 52-408, and the plaintiffs do not allege that the agreement to arbitrate is void for reasons that involve the formation of that agreement, such as duress, misrepresentation, fraud or undue influence"). Indeed, even if a party has not signed the written arbitration clause, it nevertheless may be deemed to have consented to the arbitration because conduct that "constitute[s] an acceptance of the benefits of the contract to arbitrate . . . estops them from asserting a claim of lack of authority." *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, supra, 455 (concluding that arbitrator and trial court had subject matter jurisdiction over dispute when some parties signed agreement and other challenging parties evinced consent when they participated in lengthy arbitration proceedings).

In the present case, it cannot seriously be disputed that all parties agreed in writing to the arbitration of

submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

their dispute by Pilicy.[10] Moreover, the plaintiff participated fully in the arbitration by submitting evidence and witnesses, never once questioning the arbitrator's authority over the dispute until this appeal. Accordingly, we are satisfied that, noncompliance with § 47-28 notwithstanding, the arbitrator and subsequently the trial court had subject matter jurisdiction over the land dispute in this case.[11]

## II

### THE PLAINTIFF'S CLAIMS UNDER § 52-418

We next address the plaintiff's claims with respect to the validity of the arbitration award under § 52-418. Specifically, the plaintiff claims that the trial court should have vacated the award because: (1) the arbitrator granted the Alexsons title by adverse possession of the 2.2 acre parcel in manifest disregard of the law; (2) it is incomplete because it failed to dispose of a tract of land that forms a passageway between the 2.2 acre parcel and the 4.3 acre parcel; and (3) the arbitrator was partial in violation of § 52-418 (a) (2). We address each claim in turn.

---

[10] We note that the plaintiff places great import on the fact that the arbitration agreement, in addition to being unwitnessed, was not signed by the parties, but rather by their attorneys. This does not, however, mean that the parties did not assent to the arbitration proceedings because there is no indication that the plaintiff's attorney, who has continued to represent him since the original Waterbury proceeding, improperly exceeded his authority by signing the arbitration agreement on the plaintiff's behalf. Cf. Rules of Professional Conduct 1.2 (a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to subsections [c], [d] and [e], and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.").

[11] Inasmuch as compliance with § 47-28 is not jurisdictional, the plaintiff has waived any other claims that he might have had on appeal under the statute by not raising them distinctly before the trial court. See Practice Book § 60-5; *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 82–83, 848 A.2d 395 (2004).

Before turning to the plaintiff's specific claims, we set forth "the well established principles that guide our analysis. Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its

scope of review is regarding the arbitrators' decision.
. . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . [Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . We have also recognized, however, that . . . [a]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005).

A

We begin with the plaintiff's claim that the award was made in manifest disregard of the law. Specifically, the plaintiff contends that the arbitrator improperly disregarded the law of adverse possession when he concluded that the Alexsons had gained title to the 2.2 acre property, without first concluding that the defen-

dants were the record owners of that land.[12] The defendants contend in response that the arbitrator's action was not an egregious or patently irrational application of the law governing adverse possession.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . We have also recognized, however, that an arbitrator's egregious misperformance of duty may warrant rejection of the resulting award. In *Darien Education Assn.* v. *Board of Education*, 172 Conn. 434, 437–38, 374 A.2d 1081 (1977), we noted that [i]f the memorandum of an arbitrator revealed that he had reached his decision by consulting a ouija board, surely it should not suffice that the award conformed to the submission. . . . Other states have also recognized that an arbitrator's egregious misperformance of duty or patently irrational application of legal principles warrants review and rejection of the resulting award. . . .

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the

---

[12] We note briefly that, although the arbitrator's discrete conclusion that the Alexsons had title to the 2.2 acre parcel by adverse possession was favorable to the plaintiff, we nevertheless have subject matter jurisdiction over this claim because the plaintiff is aggrieved by the judgment of the trial court confirming the arbitration award in its entirety. "Ordinarily, a party that prevails in the trial court is not aggrieved," although, "[a] prevailing party . . . can be aggrieved if the relief awarded to that party falls short of the relief sought." (Internal quotation marks omitted.) *Seymour* v. *Seymour*, 262 Conn. 107, 114, 809 A.2d 1114 (2002). In the present case, the plaintiff is aggrieved by the award to the extent that it found the Alexsons had title to only the 2.2 acre parcel, and not to the 4.3 acre parcel.

law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation*, 273 Conn. 746, 756–57, 873 A.2d 155 (2005).

We conclude that the arbitrator's ruling determining that the Alexsons were the owners of the 2.2 acre parcel by the doctrine of adverse possession was not patently egregious or irrational, and therefore, not in manifest disregard of the law. It is undisputed that the arbitrator applied the correct statutory and case law principles governing adverse possession.[13] Moreover, the arbitra-

---

[13] "[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner. . . . A finding of adverse possession is to be made out by clear and positive proof. . . . The burden of proof is on the party claiming adverse possession." (Internal quotation marks omitted.) *Woodhouse* v. *McKee*, 90 Conn. App. 662, 669, 879 A.2d 486 (2005); see also General Statutes § 52-575 (a) (fifteen year statute of limitation); *Roche* v. *Fairfield*, 186 Conn. 490, 498, 442 A.2d 911 (1982) (stating elements).

tor noted, and the plaintiff does not contest, that the Alexsons were the only users of that land during all relevant time periods. The arbitrator's decision, therefore, was not irrational in view of the evidence before him and the governing legal principles.[14] The plaintiff's claim is, therefore, nothing more than a claim of technical legal error, which likely would be harmless even under a de novo analysis, let alone a proper basis for vacatur under the manifest disregard of the law doctrine. The trial court, therefore, properly denied the plaintiff's application to vacate the award on the ground of manifest disregard of the law.

B

The plaintiff next claims that the arbitrator's failure to determine ownership of a passageway between the 2.2 acre and 4.3 acre parcels requires that the award be vacated under § 52-418 (a) (4), because he "so imperfectly executed" his powers "that a mutual, final and definite award upon the subject matter submitted was not made." The plaintiff argues that the award, therefore, failed to conform to the parties' final submission, which they contend included three distinct parcels. The defendants contend in response that the record is inadequate for review because this court does not have before it numerous relevant surveys, maps and other exhibits.[15]

---

[14] Alternatively, the arbitrator also could have explicitly assumed without deciding that the defendants had proven record title to the 2.2 acre parcel, and then moved on to the inquiry as to whether the plaintiff had proven the elements of adverse possession. See footnote 13 of this opinion.

[15] We note that the defendants also argue that the plaintiff could have, but failed to, apply to the trial court pursuant to General Statutes § 52-419 (a) (1) for an order modifying the award with respect to its descriptions of the land at issue. They also rely on *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955), and claim that, should we find the award deficient with respect to the passageway, we should remand the case with instruction to render judgment as to the passageway.

The trial and reviewing courts review "in effect, de novo" a claim that an arbitration award does not conform to the submission. (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84. "[T]hat standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission. . . . In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." (Citations omitted; internal quotation marks omitted.) Id., 85–86.

Assuming that this issue was raised properly before the trial court,[16] we conclude on the basis of our independent review of the record that the award conformed to the parties' submission, which consisted of the original arbitration agreement and the January 5, 2004 letter. These documents mention specifically only two parcels of land, namely, the 4.3 acre and 2.2 acre parcels, and

[16] It is not at all clear that this issue was raised properly before the trial court. The plaintiff did mention the arbitrator's perceived failure to make an award with respect to the passageway at oral argument before the trial court. He did not, however, make this claim specifically in his written application to vacate the award, stating only that the arbitrator improperly failed "to decide whether the [defendants'] claim of title to the entire parcel is valid and instead award[ed] only a portion of the property and thus [failed] to properly execute and executed his powers . . . in violation of [§ 52-418 (a) (4)]."

say nothing with respect to a third parcel. The award mentions only those two parcels, as well. Accordingly, inasmuch as the award conforms to the submission, we conclude that the trial court did not improperly decline to vacate the award on that ground.

C

The plaintiff's final claim is that the award should have been vacated pursuant to § 52-418 (a) (2), which provides that an award shall be vacated "if there has been evident partiality or corruption on the part of any arbitrator . . . ." The trial court rejected this claim, concluding that the evidence of partiality that had been proffered by the plaintiff was in fact evidence relating to the merits of the case, rather than evidence of a lack of impartiality by the arbitrator.

"An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacation of the arbitration award. . . . The burden of proving bias or evident partiality pursuant to § 52-418 (a) (2) rests on the party making such a claim, and requires more than a showing of an appearance of bias. . . . In construing § 52-418 (a) (2), this court concluded that evident partiality will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, evident partiality exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties." (Citations omitted; internal quotation marks omitted.) *Vincent Builders, Inc.* v. *American Application Systems, Inc.*, 16 Conn. App. 486, 494–95, 547 A.2d 1381 (1988), cert. denied, 210 Conn. 809, 556 A.2d 608 (1989).

Other than pointing out evidence that the arbitrator may have overlooked or discredited in making the

award,[17] the plaintiff does not mention any conduct on the arbitrator's part that indicates he was anything less than the impartial authority that they had bargained for with the defendants. Inasmuch as, without more, "adverse rulings do not amount to evidence of bias"; *Burton* v. *Mottolese*, 267 Conn. 1, 49, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004); we conclude that the trial court correctly determined that the plaintiff has not adduced sufficient evidence of evident partiality or bias by the arbitrator justifying vacatur of the award under § 52-418 (a) (2).

The judgment is affirmed.

In this opinion the other justices concurred.

---

[17] As evidence of partiality by the arbitrator, the plaintiff states that the arbitrator improperly: (1) read certain boundaries in the deeds; (2) "ignored the fact that [the plaintiff] paid taxes on the land for over eighty years" and the defendants "never paid taxes on the land"; (3) "ignored the fact that [the plaintiff] farmed the land for over eighty years"; and (4) "ignored the fact that [the plaintiff] threw the [defendants'] real estate agent off the land, put barbed wire around the premises and he put 'No Trespassing' signs on the premises."