# MBNA AMERICA BANK, N.A. *v.* TEOFIL BOATA
## (AC 25788)

DiPentima, Harper and Foti, Js.

Argued November 16, 2005—officially released March 28, 2006

*Teofil Boata*, pro se, with whom, on the brief, were *Stewart I. Edelstein* and *Carrie L. Larson*, for the appellant (defendant).

*Jeanine M. Dumont*, with whom, on the brief, was *Corinne D. Brophy*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The dispositive issue in this appeal is whether the trial court lacks subject matter jurisdiction to consider a claim that an issue is not subject to arbitration if that claim is not brought within thirty days of the issuance of notice of the arbitration award. Because we conclude that, under the circumstances of this case, the court had jurisdiction to consider the claim and the defendant was entitled to a hearing on the issue of whether an agreement to arbitrate existed, we reverse the court's judgment and remand the case for further proceedings.

The following facts and procedural history are relevant to our disposition of this appeal. Since 1996, the defendant, Teofil Boata, has used credit extended to him by the plaintiff, MBNA America Bank, N.A.[1] The plaintiff claims that a credit agreement accompanied the issuance of the credit card to the defendant and that, by using the credit card, the defendant acceded

---

[1] At the beginning of the proceedings, the defendant claimed that he neither received nor used the credit card issued in his name. This claim, however, never was pursued seriously and appears to have been abandoned in its entirety in the proceedings in the trial court. In any event, this claim is not pursued on appeal.

to the terms of the agreement.[2] Although this initial standard form agreement did not include an arbitration provision, the plaintiff claims to have issued an amendment to the standard form agreement in 1999. This amendment provided that any and all claims arising under the agreement would be submitted to binding arbitration. The amendment included a provision by which the card user could opt out of the arbitration provision by sending the rejection in writing to the plaintiff. The plaintiff claims that it never received from the defendant any written notice that he rejected the arbitration term, and, in fact, the defendant continued to use the credit card. The defendant claims that he did not receive either the initial standard form agreement or the amendment providing for binding arbitration.

The plaintiff alleges that in April, 2003, the defendant defaulted on his obligation to make payments on the credit card. At the time of the default, the defendant had an outstanding balance of approximately $45,000. The plaintiff initiated an arbitration proceeding with the National Arbitration Forum in an attempt to recover the allegedly overdue sum. The defendant filed a response in which he claimed that he never received any agreement and objected to the imposition of any arbitration provision of such an agreement. The defendant specifically maintained that he retained any right he had to be heard by a jury in regard to the plaintiff's claim. On March 19, 2004, the arbitrator issued notice of his award. The arbitrator found that (1) the plaintiff had issued the defendant a credit card in 1996 pursuant to the terms enumerated in the credit card agreement, (2) the credit card agreement included provisions that

---

[2] It is undisputed that the plaintiff did not present the original 1996 agreement to the arbitrator or the Superior Court. The plaintiff did attach to its application to confirm the arbitration award a standard form agreement dated 2001, presumably as evidence that it uses such agreements in the course of its business. It is not clear whether the plaintiff had submitted this standard form agreement during the arbitration proceedings.

provided that the signing and use of the card obligated the user to pay for the credit used, (3) the defendant did, in fact, utilize credit and obtain cash advances from the plaintiff, and (4) the defendant affirmed his obligation to pay for such credit by making timely payments and failing to object in a timely fashion to any outstanding balances.[3] On the basis of these findings, the arbitrator issued an award of $57,486.66 in favor of the plaintiff.

The defendant did not file a motion to vacate the award in the Superior Court or take any other action to challenge the award. On August 17, 2004, the plaintiff filed an application to confirm the award in the Superior Court pursuant to General Statutes § 52-417. On August 23, 2004, the defendant filed an objection to the application to confirm the award on the ground that the parties had not entered into a written agreement to arbitrate, rendering the arbitrator without jurisdiction to consider the matter or to issue an award. The court concluded that it did not have jurisdiction to consider the defendant's objection, which it interpreted as a motion to vacate, modify or correct brought pursuant to General Statutes §§ 52-418 or 52-419, because that objection to the award was not filed within thirty days of the issuance of notice of the arbitration award.[4] See General Statutes § 52-420 (b). The court confirmed the award, and this appeal followed.

On appeal, the defendant claims that the court improperly concluded that he failed to preserve his right to challenge the arbitrability of the claim because

[3] Although the arbitrator found that the parties had a written agreement, he did not find specifically that the agreement contained a provision for binding arbitration.

[4] The court explained this as the basis for its decision in response to a motion for articulation filed by the defendant.

he did not file a motion to vacate the award within the thirty day time limitation of § 52-420 (b).[5] We agree.

As a general matter, judicial review of arbitration awards is narrow in scope because we favor arbitration as an alternative method of dispute resolution. *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 639, 858 A.2d 762 (2004). This deferential review, however, does not extend to questions of whether any individual dispute is subject to arbitration, unless the parties have left that question, as well, to the consideration of the arbitrator. *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990). In any given case, therefore, "[w]hether a particular dispute is arbitrable is a question for the court"; (internal quotation marks omitted) id.; and deference need not be given to the arbitrator's decision.

"It is well established that [a]rbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes . . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so. . . . Moreover, [i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. . . . The arbitration provision in an agreement is, in effect, a separate and distinct agreement. Courts of law can enforce only such agreements as the parties actually make. . . . Accordingly, because an arbitrator's jurisdiction is rooted in the agreement of the parties . . . a party who contests the making of a contract con-

---

[5] The defendant also claims that the court improperly confirmed the award even though the plaintiff failed to prove the existence of a written agreement to arbitrate. This argument, in actuality, is part of the defendant's larger claim that the parties' dispute was not subject to arbitration and necessarily will form part of the court's factual inquiry on remand.

taining an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision."[6] (Citations omitted; emphasis in original; internal quotation marks omitted.) *Nussbaum v. Kimberly Timbers, Ltd.*, 271 Conn. 65, 72–73, 856 A.2d 364 (2004).

A claim, therefore, that a contract dispute is not subject to arbitration is an attack on the subject matter jurisdiction of the arbitrator and, as such, may be raised at any time prior to a final court judgment. *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, 30 Conn. App. 580, 591, 621 A.2d 316 (1993); see also *Bennett v. Meader*, 208 Conn. 352, 364, 545 A.2d 553 (1988) ("authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged any time"). "The final judgment in an arbitration proceeding is ordinarily an order of the trial court modifying, vacating or confirming the arbitrator's award." (Internal quotation marks omitted.) *Phoenix Windows, Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77, 868 A.2d 102, cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005).

Our Supreme Court has recognized "two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the

---

[6] We note that "the issue of whether the parties to a contract have agreed to arbitration implicates their intention, an issue of fact for the court's determination"; *Salomon Smith Barney, Inc.* v. *Cotrone*, 81 Conn. App. 755, 758, 841 A.2d 1199 (2004); which we will review under the clearly erroneous standard. See id., 758–59. We are unable to engage in such review in this case, however, because the court did not conduct a factual inquiry.

merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration." (Citations omitted; internal quotation marks omitted.) *White* v. *Kampner*, 229 Conn. 465, 476, 641 A.2d 1381 (1994).

When the question is whether the arbitration has exceeded the limits of the agreement of the parties to arbitrate, the question of jurisdiction may be waived due to the actions of the parties. Id., 477–78. For example, a failure to object to the arbitrability of a question during the arbitration proceedings may operate as a waiver of that objection. Id.; see also *New Britain* v. *State Board of Mediation & Arbitration*, 178 Conn. 557, 561, 424 A.2d 263 (1979). The claim raised by the defendant here, however, is not whether the arbitrator exceeded the limits of the arbitration agreement, but whether any agreement to arbitrate ever existed between the parties. In such a case, the waiver rule is inapplicable. *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, supra, 30 Conn. App. 586.

Dictum from our Supreme Court in *White* v. *Kampner*, supra, 229 Conn. 465, is instructive on this point. In that case, our Supreme Court recognized that not all questions regarding arbitrability involve subject matter jurisdiction. Id., 477 n.12. In doing so, however, the court recognized that there exist *some* questions of arbitrability that *do* involve a challenge to the subject matter jurisdiction of the arbitrator. In particular, the court noted that questions of arbitrability that inquire into the existence of a valid agreement to arbitrate are the types of arbitrability issues that necessarily involve a challenge to the arbitrator's subject matter jurisdiction and, therefore, the question of subject matter jurisdiction cannot be waived by the parties' conduct. Id.; cf. *Bennett* v. *Meader*, supra, 208 Conn. 364. It therefore

is irrelevant that the defendant failed to file a timely motion to vacate with the Superior Court.[7] The defendant raised his objection to the arbitrator's subject matter jurisdiction prior to final judgment confirming the arbitration award and, therefore, the objection was timely. See *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, supra, 30 Conn. App. 591; see also *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 448, 664 A.2d 819 (1995).

In concluding that the court had jurisdiction to entertain the defendant's claim that an agreement to arbitrate never existed and that, in fact, the defendant was entitled to a hearing on his claim, we in no way pass judgment on the merits of the defendant's claim that no such agreement existed. Unlike *Bennett* v. *Meader*, supra, 208 Conn. App. 354, 364, in which our Supreme Court held that the parties' oral agreement to arbitrate was unenforceable and violated the statutory requirements for arbitration proceedings, the plaintiff in the present case presented the court with a written amendment to its standard form contract that provided for arbitration of any disputes arising from that contract. The only question is whether this amendment became part of the parties' contract. This query regarding the intention of the parties to enter into an agreement to arbitrate is a question of fact for the court to consider prior to

---

[7] The plaintiff relies on our Supreme Court's decision in *Wu* v. *Chang*, 264 Conn. 307, 823 A.2d 1197 (2003), for its argument that the defendant is foreclosed from raising an objection to the arbitrability of the dispute because he did not file a motion to vacate within thirty days of the issuance of notice of the award. *Wu*, however, specifically involved grounds to vacate an award pursuant to General Statutes § 52-418 (1), and we assume, without deciding, that its holding would be applicable to a challenge brought pursuant to § 52-418 (4) that an arbitrator exceeded his powers. Such a claim, however, presupposes the existence of an agreement to arbitrate, something that is disputed here. The defendant's claim does not question whether the arbitrator exceeded his powers, but whether there ever existed any agreement to arbitrate that would have given to the arbitrator subject matter jurisdiction to consider the contractual dispute.

confirming or vacating the award. See *Salomon Smith Barney, Inc.* v. *Cotrone*, 81 Conn. App. 755, 758, 841 A.2d 1199 (2004).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion HARPER, J., concurred.

FOTI, J., dissenting. I respectfully disagree with the majority's determination that a claim of arbitrability tolls the thirty day period within which a motion to vacate an arbitration award must be filed pursuant to General Statutes § 52-420 (b).[1] The defendant, Teofil Boata, failed to file a timely motion to vacate the arbitration award issued in favor of the plaintiff, MBNA America Bank, N.A. The trial court consequently concluded that it lacked subject matter jurisdiction over the defendant's objection to the plaintiff's application to confirm the award, which it treated as a motion to vacate. That conclusion is consistent with *Wu* v. *Chang*, 264 Conn. 307, 313, 823 A.2d 1197 (2003), in which our Supreme Court determined that a party seeking an order to vacate an arbitration award on any of the grounds set forth in General Statutes § 52-418[2] must do so within the thirty day period prescribed by § 52-420 (b). "In other words, once the thirty day limitation period of § 52-420 (b) has passed, the award may not thereafter be attacked on any of the grounds specified in . . . § 52-418 . . . . To conclude otherwise would be contrary not only to the clear intent of the legislature as

---

[1] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[2] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

expressed in [General Statutes] §§ 52-417, 52-418 and 52-420 (b), but also to a primary goal of arbitration, namely, the efficient, economical and expeditious resolution of private disputes." (Citation omitted; internal quotation marks omitted.) Id. Because the defendant in the present case objected to the confirmation of the arbitration award on the ground that the arbitrator lacked authority to arbitrate the dispute, as set forth in § 52-418 (4),[3] and the defendant failed to do so within thirty days of receiving notice of the award, I believe that the court properly determined that it lacked subject matter jurisdiction over the defendant's objection.[4]

[3] The majority states that General Statutes § 52-418 (4) "presupposes the existence of an agreement to arbitrate"; see footnote 7 of the majority opinion; but I disagree. Section 52-418 (4) refers only to the arbitrators' exercise of power that the parties had not contemplated. If one of the parties believes that no agreement to arbitrate exists, but the arbitrator nonetheless exercises power, then that party may claim that the arbitrator exceeded his power because that party believes that the arbitrator had no power at all. Likewise, if the parties agree that arbitration is proper, but one of them believes that the arbitrator has less power than the other party believes, and the arbitrator exercises power in accordance with the second party's view, then the first party may claim that the arbitrator exceeded his power. The majority's consideration of the parties' agreement, or lack thereof, regarding the propriety of arbitration has no bearing on the proper interpretation of § 52-418 (4). The majority's interpretation of § 52-418 (4) contravenes the plain meaning rule of General Statutes § 1-2z.

[4] The majority gives great weight to the statement that "[t]he authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment." *Bennett* v. *Meader*, 208 Conn. 352, 364, 545 A.2d 553 (1988). As our Supreme Court explained in *White* v. *Kampner*, 229 Conn. 465, 477 n.12, 641 A.2d 1381 (1994), "[d]espite the expansive language of this last statement . . . it is clear that *Bennett* does not stand for the broad proposition . . . that all issues of arbitrability involve subject matter jurisdiction." It is unclear which issues of arbitrability involve subject matter jurisdiction and which do not. In *Bennett*, subject matter jurisdiction was implicated in a claim that the parties' agreement to arbitrate had failed to satisfy the requirement in General Statutes § 52-408 that the agreement be in writing. *Bennett* v. *Meader*, supra, 364. In *White*, subject matter jurisdiction was not implicated in a claim that the parties' agreement to arbitrate had required negotiation sessions to occur before arbitration. *White* v. *Kampner*, supra, 469, 477 n.12. More recently, in *Alexson* v. *Foss*, 276 Conn. 599, 603–10, 887 A.2d 872 (2006), subject matter jurisdiction was not implicated in a claim that the parties had failed to comply with

Accordingly, I would affirm the court's judgment confirming the arbitration award in favor of the plaintiff.

I respectfully dissent.

the requirement in General Statutes § 47-28 that agreements to arbitrate land disputes be recorded in the town clerk's office. I believe that the present case is similar to *White* and *Alexson* because the defendant's claim is that the arbitrator lacked authority to arbitrate the dispute, as set forth in General Statutes § 52-418 (4). As I stated in footnote 3, § 52-418 (4) plainly and unambiguously applies to any claim that an arbitrator exceeded his power, regardless of the existence of an agreement to arbitrate. Because our Supreme Court determined in *Wu* v. *Chang*, supra, 264 Conn. 313, that all grounds for vacatur provided in § 52-418 are subject to the thirty day limitation period of General Statutes § 52-420 (b), I must conclude that § 52-418 (4) does not implicate subject matter jurisdiction. According to the majority's characterization of *Bennett* and *White*, "questions of arbitrability that inquire into the existence of a valid agreement to arbitrate are the types of arbitrability issues that necessarily involve a challenge to the arbitrator's subject matter jurisdiction . . . ." Notably, however, compliance with the thirty day limitation period of § 52-420 (b) was not an issue in either of those cases. See *Bennett* v. *Meader*, supra, 354; see also *White* v. *Kampner*, supra, 470.