******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF STRATFORD *v.* INTERNATIONAL
FEDERATION OF PROFESSIONAL AND
TECHNICAL ENGINEERS,
LOCAL 134 ET AL.
(AC 35904)

Beach, Sheldon and Schaller, Js.

*Argued September 19, 2014—officially released February 3, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Tyma, J.)

*Michael S. Casey*, with whom, on the brief, was
*Christopher J. Smedick*, for the appellant (plaintiff).

*William S. Palmieri*, for the appellee (defendant
John J. Jasinski).

*Opinion*

SCHALLER, J. The plaintiff, the town of Stratford, appeals from the judgment of the trial court denying its application to vacate an arbitration award and granting the application to confirm the arbitration award filed by the defendant John Jasinski.[1] On appeal, the plaintiff claims that (1) the court improperly determined that the arbitration award was not in violation of applicable public policy,[2] (2) the court improperly determined that the arbitration panel did not exhibit evident partiality toward the defendant, and (3) the plaintiff was denied a "full and fair hearing" pursuant to General Statutes § 52-418 (a) (3). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Donna Best, the emergency medical services administrator for the plaintiff, received an anonymous letter regarding an incident involving the defendant. Best gave the letter to the plaintiff's director of human resources, Ronald Ing, who began to investigate the defendant. The anonymous letter called attention to an incident that took place on April 26, 2010, when the defendant, a paramedic, and Jennifer Simmons, a volunteer emergency medical technician, while working for the plaintiff, responded to a call to transport a patient to the hospital. While en route to the hospital following the patient pick up, and with the patient still in the back of the ambulance, the defendant returned to the plaintiff's emergency services headquarters at 900 Longbrook Avenue in Stratford to drop Simmons off. In the purported language of the profession, the defendant returned to headquarters to perform a "crew swap." The anonymous letter alleged that the defendant performed the crew swap so that Simmons would not be late for her regular paid job. The defendant claimed that he performed the crew swap to put an end to the verbally aggressive behavior Simmons was directing toward the patient.[3]

As a result of this investigation, Ing, on behalf of the plaintiff, terminated the defendant's employment by a letter dated August 2, 2010. The letter stated the following reasons, the defendant: did not take the patient directly to the hospital and instead elected to do a crew swap with the patient in the ambulance, failed to report the unprofessional behavior of Simmons, and failed to verify and correct the emergency medical services form documenting the call to show the occurrence of the crew swap. On behalf of the defendant, the union filed a timely grievance, claiming that the plaintiff had violated the collective bargaining agreement between the parties by terminating the defendant without just cause. The union sought arbitration under the collective bargaining agreement.

On April 5, 2012, and May 4, 2012, an arbitration panel

conducted a hearing to resolve two questions: "Was [the defendant] terminated for just and sufficient cause in accordance with [the collective bargaining agreement]? If not, what shall the remedy be?" On July 19, 2012, the arbitrators issued a unanimous decision in favor of the defendant.

The arbitrators found that the investigation was not conducted fairly and objectively, because Best, who had previously accused the defendant of misconduct, resulting in his dismissal,[4] was "intimate[ly] involved" in this investigation. The arbitration panel also found that the plaintiff "mischaracterized" and "overinflated" the incident in order "to justify discharging" the defendant. The panel noted that the plaintiff actually encouraged crew swaps during nonemergency calls to avoid overtime. In sum, the panel found that the defendant had not been terminated for good and sufficient cause in accordance with the collective bargaining agreement and ordered that he be reinstated.

The plaintiff filed an application to vacate the arbitration award and the defendant filed an application to confirm the arbitration award. The plaintiff argued that the award should be vacated because: (1) it violated public policy and was contrary to public safety and state regulations; (2) the arbitrators exhibited evident partiality, and (3) it was not afforded a "full and fair hearing." In its July 9, 2013 decision, the court denied the plaintiff's application to vacate and granted the defendant's application to confirm the award. The court found that this state has a clear, well-defined and dominant public policy of protecting patients from " 'detrimental acts' " by emergency medical personnel, and that there is a resulting expectation that such personnel will provide reasonable care and treatment to patients. The court determined, specifically, that the claim that the award violated public policy was colorable and merited de novo review.

Upon review of the claim on its merits, the court concluded that the award in favor of the defendant did not violate public policy and that there was no evidence that the crew swap adversely impacted the patient's health or safety. The court also found that the award did not run contrary to public policy by undermining the plaintiff's ability to manage and discipline its employees. The court took note of the investigatory participation of Best, who the court noted had an adverse history with the defendant.[5] Additionally, in response to the plaintiff's arguments regarding the partiality of the arbitration panel[6] and the lack of a "full and fair" hearing as grounds for vacating the award,[7] the court found that the plaintiff failed to meet its burden.

On appeal, the plaintiff asserts the same three grounds to support its claim that the court should have vacated the arbitration award and asks that we remand the case for further hearings. We affirm the decision

of the court.

Prior to review of the plaintiff's claims, we set forth the standard for appellate review. Our analysis is guided by the well established principles of law governing consensual arbitration. "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators. . . . The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Citation omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 109, 779 A.2d 737 (2001).

Arbitration is favored when settling private disputes and, as such, judicial review of arbitration awards is conducted in a manner "designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304, 680 A.2d 1274 (1996). Two types of evidentiary submissions are allowed in arbitration proceedings, restricted and unrestricted, which function to limit the undertaking of the arbitration panel. *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005). The scope of the submission is negotiated by the contracting parties prior to a dispute. Under an unrestricted submission, the arbitrators' decision is considered final and binding. Id. In this situation, courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. Id. "The resulting award can be reviewed, however, to determine if the award conforms to the submission." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 110. "[A] limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." (Internal quotation marks omitted.) Id.

The purpose of a determination as to whether an arbitration submission was unrestricted or restricted is not to determine what the arbitrators were obligated to do, but, rather, to determine the scope of judicial review of what they have done. "Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court

what its scope of review is regarding the arbitrators' decision." (Internal quotation marks omitted.) Id.

Furthermore, "[w]here the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80. Section 52-418 (a) provides in relevant part the following grounds upon which to vacate an award issued based on an unrestricted arbitration submission: "(1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." "In [the] construction of § 52-418 (a) (4), [our Supreme Court has], as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers . . . . [It has] also recognized, however, that . . . [a]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 81.

The court determined in the present action that there was an agreement to a consensual and unrestricted submission in the collective bargaining agreement. In its appeal, the plaintiff asserts three grounds for vacating the arbitration award: (1) the award violated public policy; (2) the panel was not impartial toward the plaintiff in violation of § 52-418 (a) (2); and (3) the plaintiff was denied a "full and fair hearing" pursuant to § 52-418 (a) (3). We are not persuaded.

I

The plaintiff claims that the award violates the well-defined public policy of this state, prohibiting paramedics from acting in a manner contrary to the welfare of their patients. Specifically, the plaintiff argues that the crew swap violated § 19a-179-9 (f) of the Regulations of Connecticut State Agencies, which provides: "No person engaged in the provision of emergency medical services shall commit an act which is detrimental to the safety, health, or welfare of a patient or the general public." The plaintiff also argues that the award violates

public policy because it interferes with the management rights of the plaintiff by limiting its contractual and legal right to manage its employees.

"Ordinarily, where there is a consensual, unrestricted submission to arbitration, the only question is whether the award conforms to the submission. . . . One exception to that rule, however, is where the award violates clear public policy. . . . Where a party challenges an award on the ground that it violates public policy, de novo review is in order if the challenge has a legitimate, colorable basis. . . . That de novo review is limited, however, to the two critical questions: (1) whether there is an explicit, well-defined and dominant public policy and (2) whether the award violates that policy. . . . It does not extend to the facts found by the arbitrator." (Citations omitted; footnote omitted.) *Burr Road Operating Co. II*, *LLC* v. *New England Health Care Employees Union, District 1199*, 142 Conn. App. 213, 223–24, 70 A.3d 42, cert. granted, 309 Conn. 909, 68 A.3d 662 (2013). We note that this exception applies only when the award is clearly illegal or clearly violates a strong public policy. *Garrity* v. *McCaskey*, 223 Conn. 1, 7, 612 A.2d 742 (1992).

We agree with the trial court that Connecticut has a clear, well-defined and dominant public policy of protecting patients from detrimental acts by emergency medical services personnel. See Regs. Conn. State Agencies § 19a-179-9 (f). Emergency personnel are to provide reasonable care and treatment to the patients whom they oversee. See id.; see also General Statutes § 20-206nn (5) (paramedic subject to discipline for negligent conduct). Although we determine that the underlying claim made by the plaintiff is colorable, we conclude that the award in the present action does not violate public policy.

On the basis of the facts presented to the arbitration panel, there was no evidence that the defendant's crew swap constituted a detrimental act, or that it put the patient in harm's way. Instead, it was reported that the patient went to the hospital because of a request by her family, and that the family also requested that the patient be transported to a hospital further away, based on a preference for its care. Moreover, counsel for the plaintiff conceded during argument before this court that the crew swap took no more than four minutes to complete. The arbitrators also credited the evidence that the plaintiff allowed this type of crew swaps: "[C]rew swaps are performed routinely when the patient, as in this case, is stable. The [plaintiff] also encourages crew swaps during nonemergency calls to avoid overtime." Because the conduct of the defendant did not constitute a detrimental act, we agree with the court that the award does not violate public policy.

With regard to the plaintiff's second public policy claim, that the award limits its legal right to manage

contractual and disciplinary actions with regard to its employees, we conclude that this claim has no merit. The plaintiff's argument suggests that, by commenting on its investigatory practices, specifically, the involvement of Best, the panel nullified the plaintiff's management rights over the investigation of the grievance. We are not persuaded. The arbitrators merely appear to have commented on the inclusion of certain actors within the investigation, who conceivably assisted in the analysis and findings in this case. We also reject this argument.

## II

The plaintiff next claims that, pursuant to § 52-418 (a) (2), the award should be vacated because there was evident partiality on the part of the arbitrators. Specifically, the plaintiff claims that the panel made arbitrary findings based on evidence that was not contained in the record, which it claims establishes the panel's evident partiality and bias against it. The plaintiff points to the arbitration panel's discussion of the bias of Best and argues that there was no evidence that her participation showed any pretextual bias. The plaintiff further argues that there was no evidence to support the finding that the plaintiff dismissed Simmons, the volunteer who accompanied the defendant, to bolster the case against the defendant, or that any other issues were raised as a pretext in order to support the plaintiff's dismissal.

A party seeking to vacate an arbitration award on the ground of evident partiality has the burden of producing sufficient evidence in support of the claim. "An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacation of the arbitration award. . . . The burden of proving bias or evident partiality pursuant to § 52-418 (a) (2) rests on the party making such a claim, and requires more than a showing of an appearance of bias. . . . In construing § 52-418 (a) (2), [our Supreme Court] concluded that evident partiality will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, evident partiality exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 617, 887 A.2d 872 (2006).

The trial court noted that, "[the plaintiff's] claims of the arbitrators' alleged improper construction of the facts relating to the crew swap or characterizations of the evidence, without more, does not constitute sufficient evidence of evident partiality by the arbitrators." We agree. The plaintiff's argument that certain factual findings made by the arbitration panel were biased lacks support. For example, the arbitration panel's decision stated: "We note that there was no evidence to show that . . . Best holds a bias against the [defendant] but

we do note that the union made many assertions of her bias. While we did not perceive bias on the part of . . . Best, we do note that the whole investigation seems improper because of her involvement from the beginning until the [defendant's] termination." Despite the plaintiff's arguments to the contrary, we read the arbitration panel's decision to say that it did not perceive bias on the part of Best or receive evidence thereof, but it did take issue with her participation due to the adverse history between her and the defendant. In this case, the arbitration panel was authorized to make such a finding, as it pertained to whether the defendant was terminated for just and sufficient cause. See *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 583–84, 440 A.2d 774 (1981) ("[t]he submission constitutes the character of the entire arbitration proceedings and defines and limits the issues to be decided"). The facts presented by the plaintiff did not make it reasonably look as though any of the arbitrators would tend to favor the defendant or disfavor the plaintiff in this case, as required to establish evident partiality.

### III

Finally, the plaintiff claims that, pursuant to § 52-418 (a) (3),[8] the award should be vacated because the arbitration panel failed to provide a "full and fair hearing." Specifically, the plaintiff argues that the panel refused to consider evidence relating to past disciplinary actions against the defendant. We disagree.

Under the facts presented by the plaintiff, this claim does not provide an adequate basis to vacate the arbitrators' decision. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Internal quotation marks omitted.) *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 584.

We are unpersuaded by the plaintiff's argument that the preclusion of certain evidence before the arbitration panel renders the award unfair. The plaintiff failed to demonstrate that the arbitration panel engaged in misconduct. Based upon applicable Supreme Court precedent, we conclude that arbitrators are entrusted to act upon their discretion in deciding whether to hear or, conversely, not hear evidence. See *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 474, 899 A.2d 523 (2006) (arbitrators afforded "substantial discretion" in determining admissibility of evidence). As a result, the court's determination was proper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] John Jasinski is a member of the International Federation of Professional and Technical Engineers, Local 134, which represented his interests in the underlying action. For clarity, we refer to Jasinski as the defendant and to the named defendant as the union.

[2] The plaintiff raises two public policy issues on appeal, which have been organized as one issue for purposes of this decision.

[3] The arbitration panel found in part: "We believe that the reason for the crew swap was two-fold. The first was to drop off a volatile and angry Simmons who had profaned the patient as reported by the [defendant], and the second reason was to drop her off so she could go to work."

[4] The union also sought arbitration in this previous matter which resulted in a finding that the defendant was not terminated for good and sufficient cause, and the panel ordered that he be reinstated.

[5] "The arbitrators considered the evidence and the memoranda submitted by the parties in rendering their written decision. The strongly worded decision makes clear that the arbitrators were troubled by Best's involvement in the investigation, as shown by their collective comment that Ing should have had some management person other than Best assist him. . . . Based on Best's involvement, the arbitrators concluded that the investigation was not conducted fairly and objectively, and that [the plaintiff] mischaracterized and overinflated the incident to justify discharging [the defendant]." (Internal quotation marks omitted.)

[6] "[The plaintiff's] claims of the arbitrator's alleged improper construction of the facts relating to the crew swap or characterizations of the evidence, without more, does not constitute sufficient evidence of evident partiality to justify vacation of the award. The assertions do not even give rise to the appearance of partiality by the arbitrators. Therefore, [the plaintiff] has failed to meet its burden to establish evident partiality."

[7] "[The plaintiff's] claim of an unfair hearing due to the preclusion of certain evidence, without more, is merely an expression of [the plaintiff's] disagreement and dissatisfaction with the award."

[8] General Statutes § 52-418 (a) (3) provides in relevant part that an award shall be vacated if the court finds that "the arbitrators have been guilty . . . in refusing to hear evidence pertinent and material to the controversy . . . ."